**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PHILLIPS/ MAY CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-47C |
| | ) | (Judge G. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

OF COUNSEL:

TRACY M. HUMPHREY
Senior Trial Attorney
Naval Facilities Engineering Command
Washington Navy Yard, D.C. 20374-5051

DAWN S. CONRAD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-2279
Fax: (202) 305-7643

electronically filed
October 27, 2006

Attorneys for Defendant

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . ii

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . . . . 1

DEFENDANT'S BRIEF . . . . . 1

STATEMENT OF THE ISSUES . . . . . 1

STATEMENT OF THE CASE . . . . . 2

I. Nature Of The Case . . . . . 2

II. Course Of Prior Proceedings . . . . . 4

STATEMENT OF FACTS . . . . . 5

SUMMARY OF THE ARGUMENT . . . . . 5

ARGUMENT . . . . . 6

I. Standard Of Review . . . . . 6

II. PMC Is Not Entitled To Pursue Its Claims Before This Court That Arise From The Same Transactional Facts As Claims Previously Litigated Before The ASBCA . . . . . 7

III. Because Some Of The Issues Raised In PMC's Complaint Before This Court Were Also Raised And Litigated Before The ASBCA, They Are Barred By Collateral Estoppel . . . . . 11

CONCLUSION . . . . . 15

TABLE OF AUTHORITIES

Page

Cases

Allen v. McCurry,
449 U.S. 90 (1980) . . . . . . . . . . 7

Ammex, Inc. v. United States,
334 F.3d 1052 (Fed. Cir. 2003) . . . . . . . . . . 9

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . 6

Bianchi v. United States,
68 Fed. Cl. 442 (2005) . . . . . . . . . . 7

Bingaman v. Dep't of Treasury,
127 F.3d 1431 (Fed. Cir. 1997) . . . . . . . . . . 11

Blonder-Tongue Lab, Inc. v. University of Ill. Found.,
402 U.S. 313 (1971) . . . . . . . . . . 11

Brown v. United States,
3 Cl. Ct. 31 (1983) . . . . . . . . . . 7

Carson v. Dep't of Energy,
398 F.3d 1369 (Fed. Cir. 2005) . . . . . . . . . . 7

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . 6

Doe v. United States,
48 Fed. Cl. 495 (2000) . . . . . . . . . . 6, 7

Federated Dep't Stores, Inc. v. Moitie,
452 U.S. 394 (1981) . . . . . . . . . . 7

Foster v. Hallco Mfg. Co.,
947 F.2d 469 (Fed. Cir. 1991) . . . . . . . . . . 8, 13

Herrmann v. Cencom Cable Assocs., Inc.,
999 F.2d 223 (7th Cir. 1993) . . . . . . . . . . 9

Jet, Inc. v. Sewage Aeration Sys.,
223 F.3d 1360 (Fed. Cir. 2000) . . . . . . . . . . 8, 11

Lane Bryant, Inc. v. United States,
35 F.3d 1570 (Fed. Cir. 1994) . . . . . . . . . . 6

McCarthy v. Noren,
370 F.2d 845 (9th Cir. 1966) . . . . . . . . . . 7

Mingus Constructors, Inc. v. United States,
812 F.2d 1387 (Fed. Cir. 1987) . . . . . . . . . . 6

Montana v. United States,
440 U.S. 147 (1979) . . . . . . . . . . 11

Ness Investment Corp. v. United States,
219 Ct. Cl. 440, 595 F.2d 585 (1979) . . . . . . . . . . 7

O'Connor v. United States,
308 F.3d 1233 (Fed. Cir. 2002) . . . . . . . . . . 13

Paalan v. United States,
57 Fed Cl. 15 (2003) . . . . . . . . . . 8

Parklane Hosiery Co. v. Shore,
439 U.S. 322 (1979) . . . . . . . . . . 8, 12

Ralph Larson & Son, Inc. v. United States,
17 Cl. Ct. 39 (1989) . . . . . . . . . . 6

RCS Enterprises v. United States,
53 Fed. Cl. 303 (2002) . . . . . . . . . . 8

United States v. Utah Constr. & Mining Co.,
384 U.S. 394 (1966) . . . . . . . . . . 8

United Tech. Corp. v. Chromalloy Gas Turbine Corp.,
189 F.3d 1338 (Fed. Cir. 1999) . . . . . . . . . . 7

Statutes

41 U.S.C. § 609(b) . . . . . . . . . . 12

Restatements

Restatement (Second) of Judgments . . . . . . . . . . 8, 9, 11

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PHILLIPS/ MAY CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-47C |
| | ) | (Judge G. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(b) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits this motion for summary judgment. In support of this motion, we rely upon the complaint filed in this matter, the following brief, and the appendix filed contemporaneously with this motion.

DEFENDANT'S BRIEF

STATEMENT OF THE ISSUES

1. Whether defendant is entitled to summary judgment because the doctrine of claim preclusion (res judicata) bars all recovery, given that the complaint seeks relief arising from the same set of transactional facts that served as the basis for previous litigation against the Government in the Armed Services Board of Contract Appeals ("ASBCA" or "board"), which resulted in final judgments upon the merits.

2. To the extent that plaintiff is not barred by res judicata, whether defendant is entitled to summary judgment upon some of the claims in plaintiff's complaint because plaintiff is barred from recovering by the doctrine of issue preclusion (collateral estoppel), given that the pertinent issues have been fully and fairly litigated and resolved by a final judgment.

## STATEMENT OF THE CASE

### I. Nature Of The Case

This dispute stems from Contract No. N62467-01-D-0257 (the "contract") between plaintiff, Phillips/May Corporation ("PMC"), and the United States Navy ("Navy"), awarded on April 11, 2001. Compl. ¶ 4.[1] The contract was for the design and construction of a religious ministry facility at the Naval Air Station-Joint Reserve Base ("NAS-JRB") in Fort Worth, Texas. Id. The Navy accepted the religious ministry facility in June 2003. A 267.[2] On November 7, 2003, PMC submitted a certified claim for delay, mal-administration of the contract, overzealous inspection, and impossibility to the contracting officer at the NAS-JRB, Fort Worth. Compl. ¶ 6. On June 9, 2006, the contracting officer issued a final decision denying PMC's claim in its entirety. A 296-312.

On January 19, 2006, PMC filed a complaint in this Court based upon the November 7, 2003 claim to the contracting officer, seeking $663,180.14 in damages for mal-administration of the contract, over-zealous inspection, micro-management of the contract, and impossibility. See generally Compl. Specifically, PMC alleges that the Navy's administration of the contract delayed PMC's performance of the contract. PMC alleges that the Navy failed to follow its own Design/Build Manual. Compl. ¶¶ 11-17, 19-20. PMC also alleges that the Navy failed to use "partnering" and violated the partnering clause of the contract. Compl. ¶¶ 13, 21(j). PMC further alleges that the Navy failed to provide a brief, understandable, and contractually enforceable Request for Proposals ("RFP"). Compl. ¶ 18. PMC also claims that the Navy failed

---

[1] "Compl.__" refers to the complaint that was filed with this Court on January 19, 2006.

[2] "A__" refers to the appendix that will be file simultaneously with this motion.

to complete all closeout work as soon as possible after the beneficial occupancy date for the new building. Compl. ¶ 20. PMC's complaint contains numerous factual allegations regarding the Navy's alleged failure to cooperate with PMC during the course of the contract, including: a mixing valve problem in the hot water; failure to provide Government-furnished telephone lines; requiring PMC to re-test and balance the heating, ventilation, and air conditioning ("HVAC") systems; the development of numerous punch lists; requiring PMC to comply with the Buy American Act ("BAA") instead of the North American Free Trade Agreement Act ("NAFTA"); providing untimely responses to numerous requests for information ("RFI"); requiring PMC to redesign the building before its design was approved; failing to manage the construction; permitting the Government inspector to run the project and violating the inspection clause of the contract; and failing to provide quality assurance reports for the project. Compl. ¶ 21.

PMC alleges that the Navy's Quality Assurance Representative, Thomas Schutze, failed to follow contract requirements by directing the construction and making changes to the contract. Compl. ¶ 23. PMC further alleges that Mr. Schutze created numerous punch-lists and inspected and re-inspected the finished work, in violation of the Navy's guidelines. Compl. ¶ 25. PMC also alleges that Mr. Schutze was guilty of over-zealous inspection throughout the life of the contract and lists many examples of his over-zealous inspection. Compl. ¶¶ 27-28. PMC claims that Mr. Schutze directed much of the contract work, without authority, and lists many examples of such direction, including major changes to the foundation design. Compl. ¶¶ 30-31. PMC also claims that Mr. Schutze had numerous conflicts with PMC's job superintendent and frequently changed and directed the contract beyond the contract requirements. Compl. ¶¶ 37-42.

PMC further alleges that the Navy "micro-managed" the contract by holding numerous meetings with PMC and its subcontractors. PMC alleges that these meetings interfered with PMC's work on the contract. Compl. ¶ 35. Finally, PMC alleges that the Navy's failure to administer the contract in accordance with its own rules and regulations resulted in making it impossible for the contractor to design and build the religious ministry facility in 256 days. Compl. ¶ 45.

## II. Course Of Prior Proceedings

As explained in detail in defendant's proposed findings of uncontroverted fact, PMC has extensively litigated its concerns regarding the Navy's administration of this contract before the ASBCA. PMC filed nine separate appeals before the board. A 1-41. After PMC elected to use the accelerated procedures provided in ASBCA Rule 12, the board scheduled a five-day hearing for these appeals from March 29 to April 2, 2004. A 52. Bench decisions were issued on each of the appeals before the board.[3] A 217-55. The board found that PMC had proven some entitlement in three appeals (ASBCA Nos. 54331, 54393, 54421), but denied entitlement in the other appeals. Id. The board issued final decisions in each of these appeals on April 16, 2004. A 215. These final decisions were never appealed to the United States Court of Appeals for the Federal Circuit.

Because of the parties' inability to agree on how much the Navy should pay PMC for the few issues where PMC was granted entitlement, some of the appeals were returned to the board for a determination of quantum, and a new docket number was assigned to them (ASBCA No. 54887). A 281-82. After participating in alternative dispute resolution ("ADR") before the

[3] Bench decisions were issued in each of the appeals, with the exception of ASBCA No. 54348, which the parties resolved prior to the hearing in these matters. A 53, 234.

board, the parties agreed upon a global settlement of ASBCA Nos. 54331, 54348, 54393, 54421, and 54887. A 294. According to the terms of the settlement, the Government paid PMC the total amount of $32,500, in full and final payment of all amounts and quantum due under these five appeals. Id. The ASBCA entered judgment in this amount on June 30, 2005. A 295.

In an attempt to try the same claims in a different forum, on January 19, 2006, PMC filed a complaint in this Court based upon its November 7, 2003 claim to the contracting officer, which was based upon the same facts and circumstances as the previous ASBCA appeals.

## STATEMENT OF FACTS

For our statement of facts, we rely primarily upon our proposed findings of uncontroverted fact, filed simultaneously with this motion, and the appendix, filed simultaneously with this motion.

## SUMMARY OF THE ARGUMENT

The Government is entitled to summary judgment in this matter because plaintiff's complaint before this Court is barred in its entirety by the doctrines of res judicata and/or collateral estoppel. Plaintiff's claims before this Court are issues that were either raised in the prior litigation between the parties before the ASBCA or issues that should have been raised in the prior litigation between the parties before the ASBCA. The claims arise from the same contract, same parties, and same operative facts as the prior appeals before the ASBCA. Many of the allegations contained in the complaint were raised before the board. To the extent that some allegations were not raised before the board, they arise from the same transactional facts and therefore, could have and should have been raised before the board. PMC is now barred from getting a second bite at the apple in this Court.

ARGUMENT

I. Standard Of Review

Summary judgment may be granted where there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987); Ralph Larson & Son, Inc. v. United States, 17 Cl. Ct. 39, 42 (1989). Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. Doe v. United States, 48 Fed. Cl. 495, 499 (2000) (citing Anderson, 477 U.S. at 247-48; Lane Bryant, Inc. v. United States, 35 F.3d 1570 (Fed. Cir. 1994)). Summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Id. (quoting Anderson, 477 U.S. at 248).

Pursuant to RCFC 56(c), summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party moving for summary judgment has the initial burden to produce evidence showing the absence of a genuine issue of material fact. However, this burden may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. Doe, 48 Fed. Cl. at 500 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)) (additional citations omitted). "If the moving party makes such a showing, the burden then shifts to the nonmoving party to demonstrate that a genuine factual dispute exists by presenting

evidence which establishes the existence of an element essential to its case upon which it bears the burden of proof." Id. (citations omitted).

## II. PMC Is Not Entitled To Pursue Its Claims Before This Court That Arise From The Same Transactional Facts As Claims Previously Litigated Before The ASBCA

The doctrine of res judicata, also known as claim preclusion, prevents parties from litigating issues that could have been raised in a prior action. Carson v. Dep't of Energy, 398 F.3d 1369, 1375 (Fed. Cir. 2005) (citing Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)) (additional citation omitted). "The doctrine serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication." Id. (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)). This Court has noted that "[a] subsequent suit is barred if it arises out of the same subject matter as a previous suit and which, 'through the exercise of diligence, could have been litigated in a prior suit.'" Bianchi v. United States, 68 Fed. Cl. 442, 461 (2005) (quoting United Tech. Corp. v. Chromalloy Gas Turbine Corp., 189 F.3d 1338, 1344 (Fed. Cir. 1999) (internal citation omitted)), appeal pending, No. 06-5042 (Fed. Cir. docketed Jan. 4. 2006). What constitutes the subject matter of a lawsuit depends on the factual basis of the complaint, and "'any cause of action that arises out of the same facts should be litigated in the same action.'" Id. (quoting United Tech. Corp., 189 F.3d at 1344). The assertion of different legal theories in a second suit will not defeat application of res judicata. Ness Investment Corp. v. United States, 219 Ct. Cl. 440, 595 F.2d 585, 588 n.6 (1979) (citing McCarthy v. Noren, 370 F.2d 845, 847 (9th Cir. 1966)). Repetitive litigation concerning the same facts is barred not only as to all litigative theories, but as to all "causes of action which were not but should have been raised in the prior litigation." Brown v. United States, 3 Cl. Ct. 31, 41 (1983), aff'd, 741 F.2d 1374 (Fed. Cir.

1984). The doctrine of claim preclusion applies with full force to actions tried before administrative boards of competent jurisdiction. United States v. Utah Constr. & Mining Co., 384 U.S. 394, 403-05 (1966).

In Paalan v. United States, 57 Fed Cl. 15 (2003), this Court articulated the test for claim preclusion:

> The doctrine of res judicata, also known as claim preclusion, predicates that "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n. 5, 99 S. Ct. 645, 58 L. Ed. 2d 442 (1979). Under this doctrine "a second suit will be barred by claim preclusion if (1) there is identity of parties (or their privies); (2) there has been an earlier final judgment on the merits of a claim; and (3) the second claim is based on the same set of transactional facts as the first." Jet, Inc. v. Sewage Aeration Sys., 223 F.3d 1360, 1362 (Fed. Cir. 2000).

57 Fed. Cl. at 17 (emphasis added). In the present case, elements (1) and (2) are clearly satisfied: the prior ASBCA appeals involved precisely the same parties and proceeded to a final judgment. As a result, only element (3) is at issue. In RCS Enterprises v. United States, 53 Fed. Cl. 303 (2002), this Court examined the third element and explained the circumstances under which two claims should be deemed to arise from the same set of transactional facts:

> [T]he [United States Court of Appeals for the] Federal Circuit has adopted a "transactional" analysis for determining if the two claims are the same. Foster v. Hallco Mfg. Co., 947 F.2d 469, 478-79 (Fed. Cir. 1991) (citing Restatement (Second) of Judgments § 24). According to the Restatement, claim preclusion extinguishes "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction or series of connected transactions, out of which the action arose." Restatement (Second) of Judgments § 24(l).

53 Fed. Cl. at 307.

The Federal Circuit has noted that a common set of transactional facts is to be identified "pragmatically." Ammex, Inc. v. United States, 334 F.3d 1052, 1056 (Fed. Cir. 2003) (quoting Restatement (Second) of Judgments § 24). "Seeking to bring additional clarity to this standard, courts have defined 'transaction' in terms of a 'core of operative facts,' the 'same operative facts,' or the 'same nucleus of operative facts,' and 'based on the same, or nearly the same factual allegations.'" Id. (quoting Herrmann v. Cencom Cable Assocs., Inc., 999 F.2d 223, 226 (7th Cir. 1993)) (internal and additional citations omitted). Therefore, if claims are based upon the same operative facts or the same factual allegations, and could have been brought in the earlier proceeding that proceeded to final judgment upon the merits, they are barred from being raised in a subsequent proceeding.

The parties in this matter have already litigated ten appeals at the ASBCA. A 217-65, 292-95. The board reached final decisions in each of those appeals. Id. The appeals before the ASBCA involved many of the same factual allegations that are contained in the complaint before this Court, including, but not limited to:

(1) the Navy's failure to partner with PMC, compare Compl. ¶¶ 13, 21(i) with A 76, 132, 144, 160;
(2) the Navy's failure to follow its own design/build manual, compare Compl. ¶ 11 with A 59, 61, 134, 150-54;
(3) the Navy's changes to PMC's design delayed construction, compare Compl. ¶¶ 14, 17, 19 with A 60-63, 72-75, 148-49, 158-60;
(4) the Navy's failure to complete close-out work, compare Compl. ¶ 20 with A 66-67, 89, 99-100, 127;
(5) the Navy's failure to cooperate with PMC, compare Compl. ¶ 21 with A 130, 155-57;
(6) the Navy's failure to honor NAFTA, compare Compl. ¶ 21(e) with A 14-16;
(7) the Navy's failure to respond to RFIs, compare Compl. ¶ 21(f) with A 143;

(8) the Navy's use of multiple punch lists, compare Compl. ¶ 21(d) with A 65, 80, 132;
(9) the Navy's overinspection of the contract, compare Compl. ¶ 21(i) with A 64-65, 118-21, 126-27, 129, 133-34;
(10) the Navy's takeover of PMC's quality control program, compare Compl. ¶ 21(i) with A 108-10, 117, 135;
(11) the Navy's failure to timely install telephone lines, compare Compl. ¶ 21(b) with A 66, 95, 102, 105-06; and
(12) the Navy's failure to accept the new building until PMC provided a new testing and balancing ("TAB") report for the HVAC systems; compare Compl. ¶ 21(c) with A 78-80, 87-88, 93-95, 98, 128, 135-36.

Moreover, during the five-day hearing before the ASBCA, Navy and PMC witnesses provided extensive testimony about the role of the Government's Quality Assurance Representative, Thomas Schutze, as well as extensive testimony about him directing changes and directing the contract. A 108-10, 113-14, 116-17, 119-25, 189, 192-93, 203-07, 209. During the hearing on ASBCA No. 54331, PMC's counsel specifically stated that Mr. Schutze was guilty of overzealous inspection and that "part of [PMC's] allegations are over-zealous inspection." A 126. Moreover, in his closing argument in ASBCA No. 54331, PMC's counsel urged the board to find that the Navy was guilty of overzealous inspection, which substantially delayed the contractor. A 127-28. In ASBCA No. 54484, PMC alleged that it was entitled to an equitable adjustment for changes to the foundation design directed by Mr. Schutze. A 39-40; see also Compl. ¶ 31(b). During the ASBCA hearings, PMC also alleged that Mr. Schutze communicated directly with PMC's subcontractors. Compare Compl. ¶ 31(o), (p) with A 189-90. Additionally, during the ASBCA hearings, testimony was given that there were conflicts between Mr. Schutze and various PMC job superintendents. Compare Compl. ¶ 37 with A 155-57, 192.

As demonstrated above, there is substantial overlap between the allegations raised before the ASBCA and the allegations raised in the complaint before this Court. Although the

complaint before this Court may contain more specific allegations regarding the Navy's alleged overzealous inspection, and Mr. Schutze's alleged directing of the contract, these are allegations that could have and should have been raised before the ASBCA. Because PMC's allegations are based upon the same operative facts and same transaction and could have been raised before the ASBCA, they are barred by the doctrine of res judicata. PMC is not entitled to another bite at the apple in a different forum. To the extent that the same allegations were raised before the board, and decided by the board in a final decision, they are also barred by the doctrine of collateral estoppel, which will be discussed below.

## III. Because Some Of The Issues Raised In PMC's Complaint Before This Court Were Also Raised And Litigated Before The ASBCA, They Are Barred By Collateral Estoppel

The doctrine of issue preclusion, also known as collateral estoppel, holds that "an issue that is fully and fairly litigated, is determined by a final judgment, and is essential to that judgment, is conclusive in a subsequent action between the same parties." Bingaman v. Dep't of Treasury, 127 F.3d 1431, 1436-47 (Fed. Cir. 1997). Issue preclusion, which serves to bar the revisiting of "issues" that have been already fully litigated, requires four factors:

> (1) identity of the issues in a prior proceeding;
> (2) the issues were actually litigated;
> (3) the determination of the issues was necessary to the resulting judgment; and,
> (4) the party defending against preclusion had a full and fair opportunity to litigate the issues.

Jet, Inc., 223 F.3d at 1366 (citing Montana v. United States, 440 U.S. 147, 153-55 (1979); Blonder-Tongue Lab, Inc. v. University of Ill. Found., 402 U.S. 313, 332-33 (1971)) (additional citations omitted); see also Restatement (Second) of Judgments § 27. Issue preclusion serves "the dual purpose of protecting litigants from the burden of relitigating an identical issue with the

same party or his privy and of promoting judicial economy by preventing needless litigation." Parklane Hosiery, 439 U.S. at 326. The Contract Disputes Act ("CDA") itself, moreover, reinforces issue preclusion by providing that factual determinations by the boards of contract appeals are conclusive unless disturbed upon judicial review. 41 U.S.C. § 609(b).

As demonstrated above, some of the allegations contained in PMC's complaint before this Court are the exact issues raised in the previous litigation before the ASBCA. In particular, in ASBCA No. 54331, PMC alleged that the Government was responsible for delay in accepting Phase I of the contract because of overzealous inspections, failure to timely furnish telephone lines, failure to partner with PMC, creating multiple punch lists, and requiring a new TAB report on the HVAC systems. A 127-34. These same allegations are contained in PMC's complaint before this Court. See Compl. ¶¶ 21, 27, 28. In the final decision of the board issued on March 30, 2004, the board determined that PMC was entitled to 40 days of compensable delay from March 21, 2003, through April 30, 2003, because the Government used the fellowship hall (the new facility) for a seminar on March 21-23, 2003. A 218-21. The board decided this use of the fellowship hall constituted acceptance of the new building. A 221. The board did not find delay attributable to overzealous inspection, Government-furnished telephone lines, required TAB reports, or the Navy's failure to partner with PMC. See A 218-21. In fact, the board held that there were major deficiencies in the above-ceiling work, especially the heating and ventilation system, concluding that "[t]he failure to install key elements in the HVA system above the ceiling and the absence of an acceptable TAB report, test and balancing report, precludes a finding of substantial completion." A 220-21. In ASBCA No. 54349, PMC sought compensation for delay caused by the Navy's alleged failure to timely respond to a differing site

condition. A 18-20. PMC alleged that various delays were partly caused by the Government's failure to respond to RFIs and failure to partner with PMC. A 143-44; see also Compl. ¶¶ 13, 21(f). The board denied this appeal in its entirety on April 1, 2004, finding that PMC was not entitled to any days of compensable delay. A 236. In ASBCA No. 54348, PMC sought a determination of whether NAFTA applied to the contract. A 14-16. After the Government admitted liability, this case was dismissed by the board. A 234. However, quantum was resolved by ADR in ASBCA No. 54887, in which the Government agreed to pay $32,500 in full and final payment for all amounts and quantum due under that appeal. A 294.[4]

Additionally, in ASBCA No. 54393, PMC sought additional compensation for additional design work and design changes required by the Navy. A 22-26; see also Compl. ¶¶ 14, 19, 21(g). During the hearing on this matter, PMC alleged that the Navy failed to follow its own Design Build Manual. A 147-54; see also Compl. ¶¶ 11-17. In its final decision issued on April 1, 2004, the board determined that PMC was entitled to an equitable adjustment for its costs to re-do the concept drawings because of a major design change required by the Government altering the shape of the fellowship hall from a rectangle to a square. A 241. The board did not find that the Navy violated its Design Build Manual, and it held that PMC was not entitled to its costs for adding any new details beyond that of the concept level of drawings. Id. The board also found that PMC was not entitled to compensable delay because design problems did not

---

[4] If PMC's NAFTA allegation, Compl. ¶ 21(e), is not barred by res judicata or collateral estoppel, see Foster, 947 F.2d at 480 ("Where a judgment between parties is entered by consent prior to trial on any issue, no issue may be said to have been fully, fairly or actually litigated"), it is barred by the doctrine of accord and satisfaction. Accord and satisfaction discharges a claim when "some performance different from that which was claimed as due is rendered and such substituted performance is accepted by the claimant as full satisfaction of his claim." O'Connor v. United States, 308 F.3d 1233, 1240 (Fed. Cir. 2002).

affect the overall contract completion date. Id. In ASBCA No. 54421, PMC sought an equitable adjustment for changes the Navy allegedly made to the approved final design. A 31-38; see also Compl. ¶¶ 14, 17. In its final decision issued on April 2, 2004, the board held that the contract provides that the contract specifications prevail over PMC's approved design where conflicts and omissions occurred. A 252. The board found that PMC was only entitled to an equitable adjustment for being required to design and replace the electrical service in the mechanical room because the contract specifications did not indicate that PMC would be required to do so. Id. Finally, in ASBCA No. 54484, PMC sought an equitable adjustment for changes to the design of the foundation allegedly directed by Mr. Schutze. A 39-41; see also Compl. ¶ 31(b). In its final decision issued on April 2, 2004, the board denied this appeal in its entirety, finding that PMC failed to prove that these design changes were ordered by the contracting officer rather than corrections to errors in the original design. A 261.

As the above examples demonstrate, there are several allegations/claims contained in the complaint before this Court which were litigated fully before the board, those allegations/claims are therefore barred by the doctrine of collateral estoppel. PMC's attempt to relitigate these issues is a burden upon the parties and judicial resources. Although PMC may not have been satisfied with the outcome of its ASBCA appeals, it did not appeal those decisions to the Federal Circuit. PMC should not be afforded another bite at the apple by raising these allegations/claims again in this Court. Accordingly, to the extent that the issues raised in PMC's complaint before this court are identical to the issues raised and finally decided before the ASBCA, those issues are barred by issue preclusion.

Because the claims contained in PMC's complaint before this Court are either issues that were raised before the ASBCA or are issues that could have and should have been raised before the ASBCA in the previous litigation between the parties, the Government is entitled to judgment as a matter of law.

CONCLUSION

For these reasons, we respectfully request that the Court grant our motion for summary judgment and dismiss the complaint with prejudice.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

OF COUNSEL:

TRACY M. HUMPHREY
Senior Trial Attorney
Naval Facilities Engineering Command
Washington Navy Yard, D.C. 20374-5051

s/Dawn S. Conrad
DAWN S. CONRAD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-2279
Fax: (202) 305-7643

electronically filed
October 27, 2006

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of October, 2006, a copy of the foregoing "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Dawn S. Conrad