**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PHILLIPS/ MAY CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br><br>No. 06-47C<br>(Judge G. Miller) |

**DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56(h) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits the following proposed findings of uncontroverted fact in support of its motion for summary judgment.

1. On April 11, 2001, plaintiff, Phillips/May Corporation ("PMC"), was awarded Contract No. N62467-01-D-0257 ("the contract") by the United States Navy ("Navy"). Compl. ¶ 4.[1]

2. The contract was a design-build contract for the design, labor, materials, and equipment necessary to complete the construction of the Religious Ministry Facility at the Naval Air Station- Joint Reserve Base ("NAS-JRB") in Fort Worth, Texas. Compl. ¶¶ 4, 11.

3. PMC was paid a total of $1,229,385.30 for the completion of the contract. Compl. at pg. 21. The original contract amount was $1,197,333, and there was an additional $32,052.30 paid through contract modifications. Id.

4. The beneficial occupancy acceptance date for the Religious Ministry Facility was June 24, 2003. A 267.[2]

---

[1] "Compl.__" refers to the complaint that was filed with this Court on January 19, 2006.

[2] "A__" refers to the appendix, filed simultaneously with defendant's motion for summary judgment.

5. After the completion of the contract, PMC filed nine appeals against the Navy at the Armed Services Board of Contract Appeals ("ASBCA" or "board"). A 1-41.

6. For each of these appeals, PMC elected the optional accelerated procedure provided in Rule 12.1 of the board's rules in order to receive a decision within 180 days from the date the board receives written notice of the appellant's request to use the accelerated procedure. A 1, 49.

7. With the exception of ASBCA No. 54348, which was settled by the parties, all of PMC's appeals were heard by Administrative Judge John I. Coldren, III, in Fort Worth, Texas, from March 29, 2004 through April 2, 2004. A 52, 54.

8. Judge Coldren issued bench decisions in each of the appeals. A 217-65.

ASBCA No. 54331

9. In this appeal, PMC sought $95,260.18 for 82 days of delay allegedly caused by the Navy's alleged failure to timely inspect and accept Phase I of the contract. A 2-4.

10. PMC's complaint before the ASBCA stated: "The Contract was divided into Phase I and Phase II. Phase I consisted of designing and constructing a new facility and Phase II consisted of certain remodeling work in the existing chapel. Phase II could not commence until the Navy accepted Phase I as being substantially complete." A 2.

11. PMC's complaint before the ASBCA also stated: "The Contract did not provide for multiple Navy inspections. The Contract did not provide for multiple Navy punch lists." A 3.

12. PMC's statement of facts for this appeal noted issues with the phone lines, pre-final inspections, lack of a pre-final punchlist, and testing and balancing ("TAB") reports, among other things. A 43-45.

13. The following statements are taken from PMC's counsel's opening statement in ASBCA No. 54331 (hearing date: March 29, 2004):

> The time for this contract was extremely short. It was to be designed and built in 256 calendar days, about 8 -1/2 months. Obviously, it needed to be built while it was being designed. That's the crux of the design-build . . . . The Navy's Design-Build Manual specifies that's how it's to be done. The Navy never allowed that to be done in this case. . . .The Government's rules on design-build say you don't change anything in the contractor's proposal that will increase the cost or increase the time to do the job. That's exactly what they did do. . . . It wasn't until December 21 of 2001 that the Navy for the first time gave Phillips/May a partial design approval to allow them to go to work.
>
> The Navy decided to fly speck this job. They went over this contract with a fine-tooth comb. They had watched this job being built for a year; their inspector had been on the job virtually every day, watching the work, getting involved in the work . . . . [The Navy] over-inspected and re-inspected, and inspected some more . . . .[T]he evidence will show that the Government [is] guilty of overzealous inspection on the acceptance of the new facility. . . .
>
> The Navy was responsible for running all the telephone lines into this building, 31 lines, I believe it is, 31 or 32. And this is their work; this is done by the Base Communication Services. They had failed to get this done. The evidence will show that they didn't have the money to do it so they didn't get it done.

A 59-66.

14. During the course of the hearing, there was extensive testimony on the TAB reports, telephone lines, the Navy's alleged failure to partner with PMC, the Navy's alleged changes to the final design, punch lists, the role of the Government's quality assurance representative, and inspections. A 76-80, 86-100, 102-06, 108-26.

15. PMC's counsel stated during the hearing: "Part of our allegations are over-zealous inspections . . . . That's what we said, that they wouldn't accept the building because of the over-zealous nature of the inspection." A 126.

16. The following statements are taken from PMC's counsel's closing statement in ASBCA No. 54331:

> We want you to hold that the Government was guilty of over-inspection of the substantially completed new construction. . . . [The Navy] certainly over-inspected it. This small building they inspected for 2 -1/2 months . . . a contract that was supposed to be designed and built in 8-1/2 months. That's over-inspection. . . . All these inspections were unnecessary.
>
> [The Navy] violated their own design-build rules, the first one being you build it while you design it – they didn't do that. And you heard how long it took. The contractor wasn't even able to go to work until the entire contract period was over with as far as construction is concerned.

A 127-34.

17. In its final decision, the ASBCA found that PMC was entitled to 40 days of compensable delay from March 21, 2003, through April 30, 2003. A 218. The board did not find that any of the 40 days of compensable delay were attributable to overzealous inspection, but, instead, found that the 40 days were based upon the Navy's use of the building in March 2003 (the board found that the use of the building in March 2003 constituted beneficial occupancy). A 221. Appeal No. 54331 was sustained in part and denied in part in accordance with that decision. Id.

ASBCA No. 54332

18. In this appeal, PMC sought a total of $13, 049.02 for delay caused allegedly by the Navy's alleged failure to timely repair a gas line. A 7.

19. PMC alleged that this leak in an underground natural gas line was a differing site condition that entitled it to payment under the differing site condition clause of the contract. A 6-8.

20. At the conclusion of the hearing on March 31, 2004, the board denied this appeal because PMC failed to prove that the gas leak delayed the overall contract completion date. A 223.

ASBCA No. 54333

21. In this appeal, PMC sought a total of $94,706.51 for various time delays that were recognized by various contract modifications extending the time of the contract, but PMC alleged that it was also entitled to any costs associated with these delays. A 11.

22. This appeal concerned modifications P00002, P00006, P00010, and P00013. A 11.

23. At the conclusion of the hearing on March 31, 2004, the board denied this appeal. The board found that PMC was not entitled to any days of compensable delay for the unilateral and bilateral modifications at issue, where time extensions were granted without compensable delay, because PMC was bound by releases contained in the bilateral modifications and elected to recover percentage markups rather than a daily overhead rate in the unilateral modifications. A 229.

ASBCA No. 54348

24. In this appeal, PMC sought a determination for whether the North American Free Trade Agreement ("NAFTA") applied to the contract. A 14-16.

25. PMC alleged that the Navy rejected items that were in compliance with NAFTA and strictly enforced the Buy American Act ("BAA") during the course of the contract. A 15.

26. The parties settled this appeal in a settlement agreement executed on December 21, 2004, confirmed in modification P00016 to the contract. A 266-73.

27. The ASBCA dismissed this appeal with prejudice on April 16, 2004. A 234.

ASBCA No. 54349

28. In this appeal, PMC sought $24,055.82 for delay caused by the Navy's alleged failure to timely respond to a differing site condition (asbestos insulation in wall). A 18-20.

29. PMC alleged that the Navy's delay in directing PMC on the proper installation of the chilled water lines after the discovery of this differing site condition resulted in the partial suspension of PMC's work on the contract. A 19.

30. Issues raised during the hearing included the Navy's failure to partner with the contractor during the contract; and the Navy's failure to respond to PMC's requests for information ("RFIs"). A 141-44.

31. At the conclusion of the hearing in this appeal on April 1, 2004, the board determined that PMC was not entitled to any days of compensable delay for the Government's failure to respond to PMC's problem in routing the chiller lines because the chiller line activity was never on the critical path and, therefore, did not affect overall project completion. A 236.

ASBCA No. 54393

32. In this appeal, PMC sought $18,997.71 for additional design work and an additional 33 days of time for delay caused by design changes. A 22-26.

33. During the course of the hearing in this appeal, several issues arose concerning the design process, including the Navy's obligations under the Navy's Design Build manual, the Navy's

alleged failure to follow this manual, and the Navy's alleged failure to partner with PMC. A 147-50, 156-57.

34. At the conclusion of the hearing, on April 1, 2004, the board sustained in part and denied in part this appeal. A 241. The board found that PMC was entitled to an equitable adjustment for its costs to re-do the concept drawings because of the major design change required by the Government altering the shape of the fellowship hall from a rectangle to a square. Id. The board found that PMC was not entitled to its costs for adding any new details beyond that of the concept level of drawings, and further denied any days of compensable delay because the design problems did not affect the overall contract completion date. Id.

ASBCA No. 54394

35. In this appeal, PMC sought $38,834.07 for 42 days of delay recognized by the Navy in Modification No. P00014 to the contract. A 28-29.

36. Modification P00014 was issued for the direct costs and a 42-day time extension associated with the Navy's direction of changes to the fire alarm control panel. A 28.

37. At the conclusion of the hearing in this appeal on April 1, 2004, the board denied this appeal. A 247. The board found that PMC was not entitled to additional days of compensable delay under a unilateral modification granting PMC an equitable adjustment for changing the fire alarm panel and granting PMC a time extension because PMC elected to collect its overhead by percentage markups rather than a daily rate. Id.

ASBCA No. 54421

38. In this appeal, PMC sought $79,733 for alleged changes that the Navy required to the approved final design. A 31-38.

39. PMC alleged that the Navy failed to follow PMC's approved final design numerous times, and required additional or changed work. A 31.

40. PMC further alleged that the contracting officer never approved formal changes to the approved final design. A 31.

41. During the hearing, there were multiple allegations from PMC regarding Government changes after final design approval, and also allegations that the Government's Quality Assurance Representative, Thomas Schutze, directed changes to the heating, ventilation, and air conditioning ("HVAC") system. A 165-67, 171-79, 182-94.

42. At the conclusion of the hearing in this appeal on April 2, 2004, the board denied this appeal in part and sustained it in part. A 252-53. The board found that PMC was entitled to recover for the upgrade to the electrical service in the mechanical room, but otherwise denied all other aspects of this appeal. Id.

ASBCA No. 54484

43. In this appeal, PMC sought $49,484 for changes to the design of the foundation allegedly required by the Government's Quality Assurance Representative, Thomas Schutze. A 39-41.

44. PMC alleged that Mr. Schutze required changes to the design of the foundation and that no modification recognizing these changes was ever issued by the Navy. A 40.

45. During the course of the hearing on this appeal, there was argument and testimony about whether Mr. Schutze directed changes to the design and increased the costs of PMC's work on the foundation. A 197-214.

46. In his closing statement for this appeal, counsel for PMC noted that "Mr. Schutze has been charged with directing things throughout some of the hearings that the Board has heard this week. This is not the first time this happened." A 211.

47. At the conclusion of the hearing in this appeal on April 2, 2004, the board denied this appeal. A 261. The board found that PMC was not entitled to recover for its costs to alter the design drawings for the new building foundation because PMC failed to meet its burden of proving that these were design changes ordered by the contracting officer rather than corrections to errors in the original design. Id.

Conclusion Of Proceedings Before The ASBCA

48. The parties entered into a settlement agreement in December 2004 in full settlement of PMC's appeals docketed as ASBCA Nos. 54348, 54393, and 54421. A 271-73.

49. This settlement agreement was reflected in Modification No. P00016 to the contract. A 266-70.

50. There was a dispute between the parties regarding the liquidated damages calculation set forth in Modification No. P00016. A 274-75, 278-80.

51. A clerical error in Modification No. P00016 was corrected with Modification No. P00017. A 276-77.

52. In January 2005, PMC brought ASBCA Nos. 54331, 54393, and 54421, back to the board for a determination of quantum, claiming that the parties had reached an impasse on the issue of quantum and requested that the board resolve that issue. A 281.

53. The board assigned docket number 54887 to the issue of quantum. A 282.

54. In February 2005, PMC also brought ASBCA No. 54348 back to the board, alleging that the Navy had "reneged" on the settlement agreement from December 2004. A 283-89. PMC requested that the board determine quantum in ASBCA Nos. 54331, 54348, 54393, and 54421. A 283.

55. After participating in alternative dispute resolution ("ADR") before the board, the parties entered into a stipulation and joint motion for judgment, which provided for a global settlement of ASBCA Nos. 54331, 54348, 54393, 54421, and 54887. A 294. According to the terms of the settlement, the Government paid PMC the total amount of $32,500, in full and final payment of all amounts and quantum due under these five appeals. Id. The ASBCA entered judgment in this amount on June 30, 2005. A 294-95.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

OF COUNSEL:

TRACY M. HUMPHREY
Senior Trial Attorney
Naval Facilities Engineering Command
Washington Navy Yard, D.C. 20374-5051

s/Dawn S. Conrad
DAWN S. CONRAD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-2279
Fax: (202) 305-7643

electronically filed
October 27, 2006

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of October, 2006, a copy of the foregoing "DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Dawn S. Conrad