# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PHILLIPS/MAY CORPORATION | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CASE NO. **06-47**C |
| | § | |
| UNITED STATES OF AMERICA | § | (Judge Miller) |
| | § | |
| Defendant | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**

**MOTION FOR SUMMARY JUDGMENT**

DAVID A. TOMLINSON
5716 Tee Box Court
Granbury, Texas 76049
817-578-8199
Attorney of Record for Plaintiff
PHILLIPS/MAY CORPORATION

Electronically filed
November 27, 2006

# TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES.................................................................... ii - iii

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT................................................ 1

PLAINTIFF'S BRIEF.................................................................................... 2

STATEMENT OF THE ISSUES................................................................... 2

I. INTRODUCTION..................................................................................... 3

II. ***RES - JUDICATA***.......................................................................... 3

Influence of the C.D.A........................................................................ 6

III. COLLATERAL ESTOPPEL.................................................................... 12

SUMMARY.................................................................................... 14

IV. APPEALS BEFORE THE ASBCA.......................................................... 15

V. HISTORY OF THE ASBCA APPEALS.................................................... 16

VI. ARGUMENT BASED ON HISTORY OF APPEALS.................................... 24

VII. SPECIFIC RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT................................................ 25

VIII. FINAL SUMMARY............................................................................. 35

IX. CONCLUSION........................................................................................ 36

# TABLE OF AUTHORITIES

**Page No.**

AAB Joint Venture v. United States,
68 Fed. Cl. 363 (Ct. Of Fed Cls 2005)................................. 7

Alfred Dana v. E.S. Originals, Inc., K-Mart Corp.,
342 R. 3d 1320 (Ct. Of App - Fed. Cir. 2003)................ 12, 13

Anderson v. Liberty Lobby,
477 U.S. 242 (S. Ct. 1986)................................................. 8

Armour of America v. United States,
69 Fed. Cl. 587 (Ct. Of Fed. Cls 2006)............................... 7

Black Clawson Co., Inc. v. Kroenert Corp.,
254 F. 3d 759 (8th Cir. 2001)............................................... 3

Container Transport International v. United States,
468 F. 2d 926 (Ct. Cls. 1972)............................................. 9

Kelliher v. Stone and Webster,
75 F. 2d 331 (5th Cir. 1935)................................................ 4

McSheffrey v. United States,
59 Fed. C. 327 (Ct. Of Fed. Cl. 2004)................................ 12

Modeer v. United States,
68 Fed. Cl. 131 (Ct. Of Fed. Cl. 2005).......................... 6, 7, 8

Northrop Grumman Corp. v. United States,
70 Fed. Cl. 230 (Ct. Of Fed. Cl. 2006)................................ 12

Paragon Energy Corporation v. United States,
645 F. 2d 966 (Ct. Cls. 1981).............................................. 6

Roxco Ltd v. United States,
60 Fed. Cl. 39 (Ct. Of Fed. Cls. 2004)................................. 10

Santa Fe Engineers, Inc. v. United States,
818 F. 2nd 856 (Ct. Of App. Fed. Cir. 1987).................... 6, 7, 8, 9, 10, 13, 35

Tecom, Inc. v. United States,
732 F 2d 935 (Ct. Of App. Fed. Cir. 1984)........................... 6

United States v. Burch,
294 F. 2d 1 (5th Cir. 1961)............................................... 4, 11

United States v. International Bulding Company,
345 U.S. 502 (8 Ct. 1953)................................................... 4

## STATUTES

41 U.S.C. §§601 - 613....................................................................... 6
41 U.S.C. §602(a)(3)........................................................................ 6
41 U.S.C. §605(a)................................................................... 6, 35
41 U.S.C. §605(b)................................................................... 6, 35
41 U.S.C. §605(c)(1)................................................................ 9, 10
41 U.S.C. §607(d)........................................................................ 35
41 U.S.C. §607(f).................................................................. 7, 9, 10

## RESTATEMENTS

Restatement (Second) of Judgments
§§ 27, 39 (1980)......................................................................... 12

## LAW DICTIONARY

Black's Law Dictionary,
4th edition (1951)............................................................... 3

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PHILLIPS/MAY CORPORATION | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CASE NO. **06-47**C |
| | § | |
| UNITED STATES OF AMERICA | § | (Judge Miller) |
| | § | |
| Defendant | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rules 56(b) and 56(h)(2) of the Rules of the United States Court of Federal Claims (RCFC), plaintiff, Phillips/May Corporation, respectfully submits this response to defendant's Motion for Summary Judgment. In support of this response, we rely upon the claims submitted to the Navy's contracting officer in this matter, the Contracting Officer's[1] decisions[2] to these claims, the Armed Services Board of Contract Appeals[3] decisions to these claims, our complaint filed in this matter, as well as applicable federal law.

---

[1] "C.O." refers to the Contracting Officer.

[2] "C.O.D." refers to the Contracting Officer's Decision.

[3] "ASBCA" refers to the Armed Services Board of Contract Appeals.

# PLAINTIFF'S BRIEF

## STATEMENT OF THE ISSUES

1. Did plaintiff try issues beyond its claims and beyond the C.O.'s decisions?
2. Could plaintiff try issues beyond its claims and could the C.O. render decisions beyond the claims submitted?
3. Under the Contracts Disputes Act of 1978, (CDA), could the ASBCA decide issues not presented to the C.O.?
4. Under the CDA was plaintiff allowed to submit separate claims to avail itself of the accelerated proceeding for small claims?
5. In submitting the small, individual claims to the C.O. and receiving C.O.D.s on each, was plaintiff's appeal to the ASBCA restricted to each claim and decision?
6. Under the CDA, is the ASBCA's jurisdiction limited to the claim submitted to and decided by the C.O.?
7. In the claims submitted to the C.O., did plaintiff ask for a final C.O.D. for (1) mal-administration of the contract, (2) for over-zealous inspection, and/or (3) for impossibility?
8. Did the C.O.D.'s issued to each of the accelerated claims appealed to the ASBCA, address (1) mal-administration of the contract, (2) over-zealous inspection, and/or (3) impossibility?
9. Under the accelerated procedure provided in the CDA for small claims, is the ASBCA restricted to the amount of the claim?
10. Under the accelerated procedure provided in the CDA for small claims, is a claimant restricted to the amount of the claim?
11. Can <u>*res judicata*</u> apply to claims beyond the ASBCA's jurisdiction to consider?
12. Can collateral estoppel apply to claims beyond the ASBCA's jurisdiction to consider?
13. If issues presented to the ASBCA were not decided by them, can <u>*res judicata*</u> apply?
14. If issues presented to the ASBCA were not decided by them, can collateral estoppel apply?

# I. INTRODUCTION

Defendant concludes in its motion that *res-judicata* and/or collateral estoppel bar plaintiff's entire complaint filed at this Court, because it had previously had its day in court when it tried eight appeals before the ASBCA. The following analysis of these two legal doctrines along with other applicable legal support is provided.

# II. *RES - JUDICATA*

*Res judicata* is defined as "a thing judicially acted on or decided," (Black's Law Dictionary).

For the doctrine of *res judicata* to apply, the following factors must occur:

"(1) the first suit resulted in a final judgment on the merits;

(2) the first suit was based on proper jurisdiction;

(3) both suits involved the same parties [or those in privity with them]; and

(4) both suits are based on the same claims or causes of action." *Black Clawson Co. Inc. v. Kroenert Corp, 245 F. 3d 759, at 763 (8th Cir. 2001).*

Factor 4, "both suits are based on the same claim or causes of action" (emphasis added) fails to apply to plaintiff's appeal before this Court.

Lets look at "same claim". Each of the eight ASBCA claims sought a recovery for specific items:

(1) Phase II Delay, in accepting the new construction(A 2-4)[4]

(2) Differing Site Condition (gas line) (A 6-8)

(3) Time related costs for 3 modifications issued (A 10-12)

(4) Differing Site Condition (chilled water line) (A 18-20)

(5) Redesign Changes (A 22-24)

(6) Time related costs for 1 modification (A 28-30)

(7) For Various changes (A 31-38)

(8) For Changes to the Foundation (A 39-41).

The current appeal is for (1)Mal-administration of the Contract, (2)Over-zealous

[4] "A__" refers to the Appendix filed by defendant with their Motion for Summary Judgment.

Inspection,(3) Impossibility of Performance and (4)Delay associated with those three items. Clearly it's not the same claim as 1 - 8 above. There are some common elements that are present in all construction contracts but the current claim appealed to this Court does not duplicate claims 1 - 8.

Factor 4 also includes "...based on the...same causes of action". The causes of action for the eight ASBCA appeals were for the specific items listed above. They involve claims for delay for specific periods based on distinctive matters such as specifically identified differing site conditions, changes or suspension of work. None of the causes of action alleged or tried before the ASBCA were for mal-administration of the entire contract, over-zealous inspection for the entire contract or impossibility. Factor 4 from the *Black Clawson* case simply does not occur in the present appeal.

It is also essential that the issues raised before the board were decided by the board before *res judicata* can apply. In the case of *United States v. Burch, 294 F. 2d 1, at 5(1961)*, the court made this perfectly clear in its discussion of *res judicata* where it found,

> "...When an issue is not determined in the earlier proceeding, though it may have been raised and argued by the parties, it is a permissible subject of controversy in the later proceeding. The Supreme Court has made these requirements clear. '...[T]he inquiry must always be as to the point or question actually litigated and determined in the original action; not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action.' citing *United States v. International Building Company, 1953, 345 U.S. 502, at page 505, 73 S. Ct. 807, 809, 97L. Ed 1182..."*(emphasis added)

Perhaps a further discussion of the doctrine of *res judicata* is called for after comparing the *Black Clawson* case with the *Burch* case. *Black Clawson* lists its four factors as necessary before the doctrine can apply and *Burch* goes much further by holding an issue alleged but not decided prevents the doctrine from applying. So what is the answer?

An excellent discussion of the doctrine of *res judicata* is provided by the Fifth Circuit in an old case, *Kelliher v. Stone and Webster,* 75 F.2d 331, at 333 (1935). Here the Court distinguished the doctrine as follows:

> "...In the first class of cases the res which is judicata is the cause of action. When once presented to a court of competent

> jurisdiction and decided on the merits, the parties have had their day in court and that cause of action is gone, and failure to urge grounds to sustain it or to make direct defenses to defeat it is no justification for a new contest over it..." (Emphasis added).
>
> "In the second class of cases the res which may be judicata is the particular issue or fact common to both suits and to conclude that particular issue of fact, it is necessary that the record of the former suit by itself or as aided by extrinsic evidence of what occurred at the trial should show with certainty that that fact or issue was indeed litigated and decided on its merits. To avoid confusion the two rules on conclusiveness, it is usual to refer to the first as res judicata and the second as estoppel by judgment. 'It is of the essence of estoppel by judgment that it is certain that the precise fact was determined by the former judgment'..." (Emphasis added).

This response has distinguished the causes of actions tried before the ASBCA and the present appeal. There was no claim on the causes of action in the present appeal presented to the ASBCA. Consequently, *res judicata* can not apply to a new cause of action never presented to or decided by the Board.

As to the second class of cases *res judicata* can apply to, (to a particular issue or fact), said issue or fact must have been both litigated and decided. None of the ASBCA decisions as set out in detail later, decided any of the issues now before this Court other than certain delay associated with specifically identified changes or differing site conditions which were the subject of the ASBCA appeal.

Neither of the types of *res judicata* discussed above apply to the present appeal.

Accordingly, based on the *Burch* case, except for the issues of delay in ASBCA 54331, 54332, 54349, 54393 and 54484, there has been no determination of any other issues now before this Court (A 217 - 265). Hence, *res judicata* does not apply at all to the issues of mal-administration, over-zealous inspection or impossibility because they were never presented to or decided by the board (Exhibits 1-8).[5] As to the issue of delay, *res judicata* applies only to the limited and specific appeals listed above, not to the entire contract.

---

[5] "Exhibit" refers to documents in chronological order that will be filed simultaneously with this Response to Defendant's Motion for Summary Judgment.

## Influence of the Contract Disputes Act (CDA)

**Defendant's motion, page 5, bottom of page** concludes plaintiff has either previously raised all of the issues found in the complaint or should have raised these issues in its appeals before the ASBCA. Defendant concludes that allowing plaintiff to go forward with the complaint filed at the Court of Federal Claims would give it a "...second bite at the apple...".

Neither the law nor the facts support defendant's position that plaintiff should have raised these issues. The CDA is the basic controlling law applicable to this issue. It addresses how a contract claim must be presented to the government; how the government through its C.O. must respond to such a claim and how and when an appeal must be taken. All of these steps are mandatory before a court or board has jurisdiction over the appeal.

The Contract Disputes Act of 1978 is found at 41 USC 601-613. It applies to any express or implied contract and for our purposes, specifically to contracts for construction, alteration, repair or maintenance of real property *41 U.S.C. Sec 602(a)(3).*

In Sec. 605(a) the CDA states "all claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the C.O. for a decision...". This same section further states that "...The C.O. shall issue his decision in writing and shall mail or otherwise furnish a copy of the decision to the contractor...". Section 605(b) of the CDA states "The C.O.'s decision on the claim shall be final and conclusive not subject to review by any form, or government agency, unless an appeal or suit is timely commenced...".

Only by following these exact steps set out in the CDA is jurisdiction to hear an appeal from a C.O.'s final decision conveyed. *Paragon Energy Corporation v. United States, 645 Fed 2d 966 at 969 & 970(1981). Modeer v. U.S., 68 Fed Cl. 131 at 135 (2005).* For our purposes here, even more important is that the jurisdiction conveyed is restricted to the claim presented. *Santa Fe Engineers, Inc v. United States 818 Fed 2d 856, at 858-859 (1987).* There the Court of Appeals for the Federal Circuit held:

> "...On appeal to the Board or in a direct access action in the Claims Court, a contractor may increase the amount of his claim, *Te-Com. 732 F.2d at 937-38,* but may not raise any new claims not presented and certified to the contracting officer..." (Emphasis added).

The Court went on to explain that its holding was not only to a certified claim but to any claim where it found:

> "...This addition of a claim arising from the collective nature of all the problems, changes and directives that were issued on the project was entirely new and had never been presented to the contracting officer, **or** certified to him..." (emphasis added).

The Court concluded the new claims Santa Fe tried to argue at the Board should be dismissed because the contractor had improperly presented to the board, claims broader than the claims originally submitted to the C.O. In other words, the Court had no jurisdiction to hear matters on appeal that were not the subject of a proper C.O.'s decision. *Santa Fe Engineers, Inc v. United States 818 Fed 2d 856, at 858-859 (1987).* See also: *Modeer v. U.S., 68 Fed. Cl. 131 at 137 (2005); AAB Joint Venture v. U.S., 68 Fed Cl. 363 at 365 (2005); Armour of America v. U.S., 69 Fed. Cl. 587 at 590 (2006).* Each of these recent decisions from the Court of Federal Claims cite with approval *Santa Fe*'s holding on this issue of no jurisdiction for new claims.

Likewise, appellant (now plaintiff) could not have raised these new issues to the ASBCA just because they arose from the same contract and involved the same parties as defendant argues in its summary on page 5 of its motion. Both appellant and the board were restricted to the claims appealed to the board. There is no "second bite of the apple"

There is another reason why the issues now before this Court were not tried nor could they have been tried before the ASBCA. Plaintiff elected the Small Claims Accelerated Procedure set out in Rule 12.1 of the ASBCA's rules which rule is only applicable to claims of less than $100,000 [Exhibit 9 & 41 U.S.C. sec.607(f)]. Plaintiff could not have tried the new claims of mal-administration, over-zealous inspection, impossibility or delay associated with these claims because of this monetary limitation. The claim amount for these items is $663,180.14. (Compl. p. 21).[6] Such a substantial increase in any one of the claims after appeal to the board would have required certification and re-submission of the claim to the C.O. See *Modeer v. U.S., 68 Fed.Cl 131 at 137 (2005).* Here the Court determined that if a

---

[6] "Compl." refers to the Complaint filed with this Court January 19, 2006.

new claim were submitted, a new certification was necessary.

Clearly, the eight ASBCA appeals were for specific matters that did not include the matters now before this Court for the entire contract. To have added mal-administration, over-zealous inspection for the entire contract as well as impossibility, would have been a new claim requiring both re-submission and certification to the C.O.

In Conclusion:

(1) The board's jurisdiction for the ASBCA appeals was limited to each of the claims submitted *Santa Fe Engineers, 818 F.2d 856 at 858-859 (1987).*

(2) None of these ASBCA claims involved the specific claims presently before this Court other than the limited items identified above (A 1 - 41).

(3) None of the ASBCA decisions decided the specific issues presently before this Court other than as discussed earlier for the limited issue of delay (A 217 - 265).

(4) Plaintiff was limited by the amount involved in each of its appeals before the ASBCA and therefore could not change them to include over $600,000 worth of additional claims *Santa Fe Engineers, 8l18 F.2d 856 at 858-859 (1987), Modeer v. U.S., 68 Fed. Cl. 131 at 137 (2005).*

There exist genuine issues of fact that are material to the outcome of this Court action and which are both un-litigated and undecided:

1. Mal-administration of the Contract (Compl., pp. 3 - 8)
2. Over-zealous Inspection for the Life of the Contract (Compl., pp. 9 - 18)
3. Impossibility (Compl., p. 20)
4. Delay associated with all three of the above issues (Compl.).

**Defendant's motion, page 6** discusses the standard of review for summary judgment. Plaintiff has no issue with the case law cited but wishes to emphasize the point that summary judgment will not be granted if there is a material fact still in dispute. As earlier stated, the basic claims present in plaintiff's complaint to this Court are material to the appeal and are undecided as well (Compl.).

What does it require to be a material fact? According to the Supreme Court, a fact that might significantly affect the outcome of the litigation is material. *Anderson v. Liberty Lobby, 477 U.S. at 246, 106 S.Ct. 2505 (1986).*

If defendant failed to properly administer this contract and this resulted in damaging plaintiff, would this fact significantly affect the outcome of the litigation?

If defendant were guilty of over-zealous inspection which resulted in damaging plaintiff, would this fact significantly affect the outcome of the litigation?

If the contract could not be performed within the time provided by defendant and this resulted in damaging plaintiff, would this fact significantly affect the outcome of the litigation?

The obvious answer is "yes" in each of these instances.

An affidavit by George Powers who was at different times both the Quality Control Inspector and the job Superintendent for plaintiff is evidence of just how material these facts are (Exhibit 10).

**Defendant's motion, page 7** discusses the application of *res-judicata* and attempts to apply it to plaintiff's appeal before this Court.

First, defendant refers to "...litigating issues that could have been raised in a prior action...". As discussed earlier in this response, both plaintiff and the ASBCA were limited to try only the appeal decided by the Government's C.O.. *Santa Fe Engineers, Inc v. United States 818 Fed 2d 856 at 858-859 (1987).*

Perhaps defendant believes plaintiff should have submitted its claims differently to the C.O. so as to include these new claims. Not only was plaintiff not required to do that as the CDA allows for the submittal of separate claims, but in fact, in order to avail itself of the small claim accelerated procedure (180 days), plaintiff was required to submit only those claims of less than $100,000 *[41 U.S.C. Sec. 605 (c)(1)and Sec. 607 (f)].* Plaintiff has the absolute right to rely on the CDA regarding how it submits its claims. As set out in the case of *Container Transport International v. United States, 468 F.2d 926 (1972),* the Court of Claims addressed an issue of *res-judicata*. The Court found that "...there was no doubt that plaintiff could have presented its current issues in its first claim..." and that *res-judicata* should apply except the Court found that plaintiff had relied on a previous decision of the Court of Claims that allowed plaintiff to split its demands into two separate cases. Consequently, the Court held that plaintiff was entitled to rely on the previous case and *res-judicata* did not apply here.

Plaintiff in the current appeal is likewise entitled to rely on the existing law on the subject of Government contract claims, namely the CDA. By so doing, plaintiff should not be penalized for following the law.

**Defendant's motion, page 8** cites the *Paalan v. United States* case as determinative of the present appeal. *Paalan* does not go far enough to explain when *res-judicata* applies based on its three step test (page 8 of defendant's motion).

Clearly, the first two standards listed in *Paalan* exist on every contract claim decided by a board or court. In a construction contract with the Government, the parties are always the same (the prime contractor and the Government); it's the same contract; it's the same location; it's the same basic set of facts. By defendant's interpretation of *Paalan*, once a contractor has tried a single claim before any forum and received a decision, *res-judicata* should apply to any other claims brought later. That is completely unrealistic.

An even newer case from this Court, *Roxco, Ltd v. United States, 60 Fed Cl. 39, at 44 (2004)* addressed the subject of *res-judicata* in a more realistic manner. There the Court in discussing *res-judicata* in connection with an administrative board stated:

> "While *res-judicata* exists primarily as a function of the courts, final determination of administrative bodies may be afforded *res-judicata* status. When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it **which the parties have had an adequate opportunity to litigate**, the courts have not hesitated to apply *res-judicata* to enforce repose..." (citing cases) (Emphasis partially added).

Plaintiff was restricted by its claims and the amount of its claims when it tried its appeals before the ASBCA *Santa Fe Engineers, Inc v. United States 818 Fed 2d 856 at 858-859 (1987)* and *41 U.S.C. Sec 605(c)(1) and Sec 607(f).* Consequently, plaintiff did not have an "adequate opportunity to litigate" the new claims now before this Court. Hence, *res-judicata* should not apply.

**Defendant's motion, page 9** states "...if claims are based upon the same operative facts or the same factual allegations, **and could have been brought in the earlier proceeding**, that proceeded to final judgment upon the merits, they are barred from being raised in a subsequent proceeding." (Emphasis added.) Since plaintiff could not have

brought these new claims which had not been decided by the C.O., plaintiff cannot now be barred from raising them before this Court.

Defendant attempts in its motion from pages 9 - 11 to show that the new issues in the present appeal were actually tried before the ASBCA. There were references to various terms concerning inspection, failure of the Navy to do certain things, etc., but all of these references related to the specific ASBCA appeal being tried at the time. In other words, if appellant (plaintiff) referred to a failure by the Navy to timely inspect, it was limited to the appeal being tried and the board's decision was also so limited. Finally, the board's decisions never decided any issues regarding those now before this Court other than limited decisions on delay (A 217 - 265). There has been no adjudication. (*United States v. Burch, 294 F.2d 1, 1961).*

Clearly, *res judicata* does not apply to the appeal before this Court for the following reasons:

(1) The claim of mal-administration for the entire contract has never been tried. There have been only a few references to elements of this subject in a few of the ASBCA appeals. Primarily, it was a subject introduced at the beginning of the hearings for the entire contract (A 58-63) but this claim was never tried or decided in any of the ASBCA decisions (A 217-265).

(2) The claim of over-zealous inspection for the entire contract has never been tried. Over-zealous inspection was made an issue in only one appeal (ASBCA 54331 Phase II Delay). It was never made an issue in the other seven appeals (A 1 -41). As to ASBCA 54331, over-zealous inspection was not a consideration in the board's decision (A 217-221).

(3) Delay was an element in several of the appeals: ASBCA 54331 (82 days), ASBCA 54332 (18 days), ASBCA 54349 (28 days), ASBCA 54393 (33 days), ASBCA 54484 (23 days) (A 1-4, 5-8, 17-20, 21-24, and 42-45). This is a total of 184 days out of more than 800 days of contract performance. The element of delay for other reasons than claimed in the above numbered appeals remain unlitigated.

(4) Impossibility was never litigated in any of the ASBCA appeals (A 1-4) and (A 217 - 265). There could be no *res judicata* applicable to this issue.

## III. COLLATERAL ESTOPPEL

On page 11 of its motion, defendant argues issue preclusion through the doctrine of collateral estoppel.

The four factors to establish issue preclusion found in *Alfred Dana v. E. S. Originals, Inc., K-Mart Corp. 342 F.3d 1320 at 1322(2003)* are in more detail than provided by defendant. They are also cited in the Court of Federal Claims case of *McSheffrey v. United States, 59 Fed. Cl. 327, at 330(2004) at page 330* and the very recent Court of Federal Claims case of *Northrop Grumman Corp. v. United States, 70 Fed. Cl. 230 at 233(2006).*

The four factors are:

"(1) the issue at stake is identical to the one involved in the prior proceeding;

(2) the issue was actually litigated in the prior proceeding;

(3) the determination of the issue in the prior litigation must have been 'a critical and necessary part' of the judgment in the first action;

(4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding." citing cases. (emphasis added)

Defendant cannot support any one of these four factors.

(1) The issues before this Court are different from the issues tried before the ASBCA (A 1-41 and Compl.).

(2) Mal-administration, over-zealous inspection (except as it related to ASBCA 54331) and/or impossibility were not litigated at the Board (A 1-41, 217-265).

(3) The judgments of the ASBCA did not contain or mention the current issues before this Court so they were not part of the ASBCA's decisions (A 217 - 265).

The Court of Federal Claims in *Northrop Grumman Corp., 70 Fed Cl.230 at page 232* cited the general rule for issue preclusion by quoting The Restatement:

> The Restatement provides the general rule of issue preclusion: When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."

Examining all the ASBCA final judgments, nowhere is there any determination found

about mal-administration by the Government, overzealous inspection by the Government or impossibility (A 217 - 265). Without this determination, there can be no "issue preclusion".

(4) Plaintiff did not have a full and fair opportunity to litigate the current issues before this Court as they were limited to the claims presented and decided by the Government's C.O. *Santa Fe Engineers, Inc* v. *United States* *818 Fed 2d 856 at 858-859(1987).*

Defendant cannot establish all four of the factors required before collateral estoppel can be applied; in fact, they cannot establish even one of the four necessary factors.

Further support of plaintiff's position is discussed in *Alfred Dana, 342 F.3d 1320, quoting at page 1323*

> "...for purposes of issue preclusion...final judgment includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect..."
> "...The test for finality is whether the prior decision was 'adequately deliberated and firm' or 'avowedly tentative' and whether the parties were fully heard in the prior proceeding..."

The decisions rendered by the ASBCA under plaintiff's contract did not even address the current issues before this Court. Even more compelling, however, is the fact that neither of the parties were "fully" heard on the current issues before this Court. Instead, only the matters claimed in each ASBCA appeal were tried and decided (A 1 - 41, 217 - 265). With the limited exceptions for delay, none of these claims now claimed before this Court were tried and decided (A 217-265).

Defendant's motion goes on to identify examples of what it identifies as "...the exact issues raised in previous litigation before the ASBCA." For example," over-zealous inspection, failure to timely furnish telephone lines, failure to partner, creating multiple punch lists and requiring a new TAB report (page 12 of motion). This was all in the appeal of ASBCA 54331, a claim for 82 days of delay. The issue was delay. The various items listed above were factual allegations for ASBCA 54331, not the entire contract. Also, as stated in defendant's motion near the bottom of page 12, the board did not find delay attributable to over-zealous inspection. Instead, they found construction deficiencies as part of the delay. But most important, as far as collateral estoppel is concerned, the board made no decision on any of these five items listed above other than the need for a new TAB report (A

217 - 221). No decision was rendered on these other matters. A careful review of all of the ASBCA decisions finds nothing decided on the issues now before this Court (A 217 - 265).

Defendant's reference to the principle of accord and satisfaction on page 13 of the motion is not relevant to the issues here. The accord and satisfaction related to a dispute over quantum that had to be decided by a return to the ASBCA in June 2005 (A 282 - 291). A settlement was reached before Judge Van Broekhoven which resolved the remaining unsettled appeals to the ASBCA (A 294-295). The present appeal (No. 06-47C) before the U.S. Court of Federal Claims was never referenced or involved in this settlement (A 284-291).

## SUMMARY

*Res judicata* only applies to a claim or cause of action previously litigated, (or that should have been litigated,) at the first forum. The claims before this Court were not tried before the ASBCA and because of the CDA, could not have been tried. *Res judicata* cannot apply to the new claims before this Court.

Collateral estoppel only applies to "identical" facts or issues previously litigated where these same "identical" facts or issues became a critical and necessary part of the judgment. Otherwise, collateral estoppel (issue preclusion) cannot apply. None of the issues before this Court other than specific delay periods, were ever a part of the board's judgments, hence, collateral estoppel (issue preclusion) cannot apply either.

## IV. APPEALS BEFORE THE ASBCA

At this point, a detailed review of the appeals taken to the ASBCA under this contract will clearly show claims different from those presented to this Court in plaintiff's Complaint. There were a total of nine (9) claims appealed to the ASBCA under the contract for the Religious Ministry Facility. As set out in each of their complaints, they are described as follows:

| | |
|---|---|
| ASBCA 54331 | A claim for delay based on failure of the Government to timely accept the new construction (A 2 - 4). |
| ASBCA 54332 | A claim for delay based on a leaking gas line (A 6 - 8). |
| ASBCA 54333 | A claim for time-related costs based on change orders issued by the Government (A 10 - 12). |
| ASBCA 54348 | Buy American Act/NAFTA claim resolved by the C.O.'s decision (A 234). |
| ASBCA 54349 | A claim for delay concerning an underground chilled water line (A 18 - 20). |
| ASBCA 54393 | A claim for extra design costs for re-siting the building to be constructed (A 22 - 26). |
| ASBCA 54394 | A claim for time-related costs based on Change Order P00014 issued by the Government (A 28 - 30). |
| ASBCA 54421 | A claim for the following:<br>(1) Changes to the electrical service and upgrading three transformers<br>(2) Additional sodding of grass<br>(3) Relocating an exterior power line<br>(4) Providing certain exterior doors<br>(5) Providing certain door hardware<br>(6) Providing a Corian counter top<br>(7) Providing certain cabinets in a bathroom<br>(8) Providing six manual dampers in the ventilating system (A 31 - 38). |
| ASBCA 54484 | A claim for foundation changes to certain concrete and re-bar (A 39-41). |

None of the claims listed above were for the issues of "Mal-administration of the Contract by the Government, Over-zealous Inspection by the Government or Impossibility of Performance" (Compl.). There are some elements of delay but each claim involved specific costs for alleged additional work or time-related costs associated with specifically defined changes, differing site conditions or modifications issued by the Government.

Clearly, there are some of the same elements in the facts alleged before the ASBCA that are alleged in plaintiff's complaint before this Court. After all, this was a simple construction contract to build one new building and re-hab another, however the issues to be resolved are not the same. An analysis of the issues before the board, the C.O. decisions to those issues and the ASBCA decisions will help make this clear.

## V. HISTORY OF THE ASBCA APPEALS

**(1) ASBCA 54331**

**Claim for delay based on failure of the Government to timely accept the new construction (Phase II Delay) - became ASBCA 54331 on appeal.** Phase II Delay Claim for 82 days of delay and $95,260.18 (A 2 - 4).

***ISSUES:***

1. Timely acceptance of the new construction.
2. Limitation of Navy inspection prior to acceptance of the new building.
3. Over-inspection by the Navy for a 2 ½ month period.

These are the issues set out in appellant's complaint filed with the ASBCA (A 2- 4).

***THE C.O.D.***

The facilities (new building) was not ready for acceptance in February 2003;

That the Contractor commenced working on Phase II earlier than claimed;

The punch list provided by the Contractor was inadequate resulting in additional work by the Government;

The additional work by the Government may have delayed final acceptance but it was the Contractor's fault;

The Contractor failed to provide a timely testing and balancing report which impeded acceptance;

A reasonable time to move the Chaplain's office equipment was two weeks. (Exhibit 6).

***ASBCA 54331 DECISION***

The board held that appellant was entitled to 40 days of compensable delay from 21 March, 2003 through 30 April, 2003 based on its finding that the Government accepted the new building by making use of it beginning 21 March, 2003 (A 217 - 221). It also found there were major deficiencies in the ceiling area as well as a lack of an acceptable TAB report which prevented earlier acceptance of the new building (A 220-221).

**(2) ASBCA 54332**

**Claim for delay based on a leaking gas line - became ASBCA 54332 on appeal.** Existing Natural Gas Line found leaking, 18 day delay, $13,049.02 claimed (A 6 - 8).

***ISSUES:***

1. Differing site condition
2. Suspension of work for 18 days

These are the issues set out in appellant's complaint filed with the ASBCA (A 6 - 8).

***THE C.O.D.:***

The leak was caused by the Contractor;

The Contractor failed to adequately locate various utilities including this gas line before starting to work;

The Contractor was not authorized to proceed with the gas line work when it was encountered;

The delay period caused by the leak was less than one day;

The Government did not prohibit the Contractor from working;

The Contractor was at fault for not proceeding with the gas line work;

The Contractor failed to request an outage on a timely basis;

The Contractor was remiss in not resolving several deficiencies at the site (Exhibit 7)

***ASBCA 54332 DECISION***

The board held that appellant was not entitled to any days of compensable delay for a gas leak because appellant failed to prove that the gas leak delayed the overall contract completion date (A 222 - 227).

**(3) ASBCA 54333**

**Claim for time-related costs based on change orders issued by the Government - became ASBCA 54333 on appeal.** Claim for Time-related Costs Associated With Certain Contract Modifications, 84 days, $94,706.51 claimed (A 10 - 12)

***ISSUES:***

1. Equitable adjustment associated with directed changes.
2. Suspension of work costs.

These are the issues set out in appellant's complaint filed with the ASBCA (A 10-12).

***THE C.O.D.***

Several of the change orders involved had been signed and contained releases thereby barring the Contractor from further recovery;

Denied recovery for the remaining change orders claimed because of a requirement for consistency on how they were marked up (percentage of direct costs, not a daily rate as claimed) once the Contractor made that election (Exhibit 8).

***ASBCA 54333 DECISION***

The board held that appellant was not entitled to any days of compensable delay for several unilateral and bilateral modifications where time extensions were granted without compensable delay because appellant was bound by releases contained in the bilateral modifications and elected to recover percentage markups rather than a daily overhead rate in the unilateral modifications (A 228 - 232).

**(4) ASBCA 54348**

**North American Free Trade Agreement** (NAFTA) (A 14 - 16)

***ISSUES:***

1. Whether NAFTA applied to this contract (A 14 - 16).

This was the issue appealed to the ASBCA but before trial, the C.O. issued his decision in favor of appellant and the costs involved were settled between the parties (A 234 and settlement agreement).

***ASBCA 54348 DECISION***

The C.O.'s Decision which was received near or at the time for this appeal found merit in the claim; accordingly there was no trial before or decision by the ASBCA on this appeal other than to dismiss the appeal as moot (A 233 - 234).

**(5) ASBCA 54349**

**Claim for delay concerning an underground chilled water line - became ASBCA 54349 on appeal.** Relocation of Chilled Water Line, 28 day delay, $24,055.82 claimed (A 18 - 20).

***ISSUES:***

1. Differing site condition.
2. Suspension of work.

These are the issues set out in appellant's complaint filed with the ASBCA (A 18-20).

***THE C.O.D.***

It was the Contractor's responsibility under a design/build contract;

Proper configuration and final design was the Contractor's responsibility;

The Government did nothing to delay the Contractor;

The Government provided a timely review and response to the Contractor on the issue of the chilled water line.

Most of the problems on this job were caused by the contractor's lack of understanding of the design/build process (Exhibit 9).

***ASBCA 54349 DECISION***

The board held that appellant was delayed but was not entitled to any days of

compensable delay for the Government's failure to respond to appellant's problem in routing the chiller lines because this chiller line activity was never on the critical path and, therefore, did not affect the overall project completion (A 235 - 239).

**<u>(6) ASBCA 54393</u>**

**Claim for extra design costs for re-siting the building to be constructed - became ASBCA 54393 on appeal.** Re-design Changes, 33 days' delay, $18,997.71 claimed (A 22 - 24).

***<u>ISSUES:</u>***

1. Equitable adjustment for changes.
2. Delay.

These are the issues set out in appellant's complaint filed with the ASBCA (A 22-24).

***<u>THE C.O.D.</u>***

The contractor's design concept submitted was not a final design and the Government had the right to evaluate it;

The contract contemplated changes to the design concept;

Changes to the design concept are not compensatory changes;

The changes made to the design concept didn't increase the Contractor's costs;

The changes made were minor;

The Contractor failed to timely request an adjustment to the Contract.

(Exhibit 10).

***<u>ASBCA 54393 DECISION</u>***

The board held that appellant was entitled to an equitable adjustment for its costs to re-do the concept drawing due to the major design change required by the Government altering the shape of the fellowship hall from a rectangle to a square. The board also held that appellant was not entitled to its costs for adding any new details beyond that of the concept level of drawings. The board also denied any days of compensable delay because these design problems did not affect the overall contract completion date (A 240 - 245).

**(7) ASBCA 54394**

**The claim for time-related costs based on change order P00014 - became ASBCA 54394 on appeal**. Claim for Time-Related Costs Associated with Modification P00014, $38,834.07 claimed (A 28 - 30).

***ISSUES:***

1. Equitable adjustment associated with directed changes.

This was the issue set out in appellant's complaint filed with the ASBCA (A 28 - 30).

***THE C.O.D.***

Once a contractor has chosen the method of allocating overhead to change orders, it is bound to that election;

Payment of additional overhead would result in excessive and redundant compensation for both field and home office overhead. (Exhibit 11).

***ASBCA 54394 DECISION***

The board held that appellant was not entitled to any additional days of compensable delay under a unilateral modification granting appellant an equitable adjustment for changing the fire alarm panel and granting appellant a time extension because appellant had elected to collect its overhead by percentage markups rather than a daily rate (A 246 - 250).

**(8) ASBCA 54421**

**The claim for various mechanical and electrical changes as well as changes to certain interior work - became ASBCA 54421 on appeal.** Claim for Various Changes, $79,733.00 claimed (A 31 - 38).

***ISSUES:***

1. Equitable adjustment for numerous changes made by defendant.

This was the issue set out in appellant's complaint filed with the ASBCA (A 31-38).

***THE C.O.D.***

The Order of Precedence clause of the contract prevailed over all conflicts between the RFP and final design;

Government review or acceptance of the final design did not waive the design/build

requirements in the contract documents, unless a variance had been approved;

For the aluminum exterior doors, the contract required extruded aluminum frames, not wood clad frames;

The exterior doors were required to be white;

For sodding and seeding, the C.O. held the contract required sod exclusively;

The drainage system for gutter down spouts was a contract requirement;

For electrical changes, the Government did not direct any changes to the electrical or lighting systems and that what was installed was contractually required;

For panel-fold wall systems, the C.O. held this had merit as it was part of the NAFTA claim;

For removal and replacement of 500 bricks, the C.O. held that this was work done under the contractor's quality control inspector;

For cabinets and counter-tops, the C.O. held that the contract required the solid surface counter-tops;

For electrical service upgrade, the C.O. held that the contractor was responsible for the design and performance of all work which was required to provide a facililty suitable for its intended purposes. As for overhead power upgrade, (37.5KVA transformers to 75KVA transformers), first the Government did not direct the work and that it was the Contractor's responsibility to provide adequate power;

For volume dampers, the C.O. held the Government never directed any of this work. The dampers were a contract requirement. Removing the dampers was a Contractor responsibility, too, as it was necessary to balance the system.(Exhibit 12).

***ASBCA 54421 DECISION***

The board held that appellant was entitled to an equitable adjustment for being required to design and replace the electrical service in the existing mechanical room servicing both the new building as well as the renovated building. The board denied a recovery for the upgrading of three 37.5 KVA transformers to three 75KVA transformers because appellant's design included in its technical proposal indicated that appellant would do this upgrade at no cost if it were necessary. The board also denied a recovery to relocate an exterior power line to eliminate its sag for lack of C.O. direction. The board also held that

the contract specifications prevailed over appellant's approved design where conflicts and omissions occurred. Therefore, the board held appellant was not entitled to an equitable adjustment for providing white extruded exterior doors, for providing several exterior doors with a factory white finish with matching hardware rather than dark anodized aluminum color with matching hardware, for providing a Corian kitchen counter top and three cabinets in the men's room and for installing and removing six manual dampers upstream of the VA boxes (A 251 - 259).

**(9) ASBCA 54484**

**Claim for foundation changes for certain concrete and rebar - became ASBCA 54484 on appeal.** Claim for Changes to the Foundation, 23 days' delay, $49,484.00 claimed (A 39-41).

***ISSUES:***

1. Equitable adjustment for changes directed by defendant.
2. Delay.

These are the issues set out in appellant's complaint filed with the ASBCA (A 39-41).

***THE C.O.D.***

The Government did not direct this work;

Any increased costs to the Contractor were a result of his deficient design and poor workmanship;

The Contractor, not the Government was responsible for the accuracy and construction feasibility of the design;

There were inadequate details to the design to facilitate construction;

It was the Contractor's own engineer who recognized the need for the foundation changes;

The Contractor's poor workmanship was partially responsible for the increased costs. (Exhibit 13).

***ASBCA 54484 DECISION***

The board held that appellant was not entitled to recover its costs to alter the design drawings for the new building foundation because appellant failed to meet its burden of

proving that these were design changes ordered by the C.O. rather than correction to errors in the original design (A 261 - 265).

## VI. ARGUMENT BASED ON HISTORY OF APPEALS

There was no issue presented to the board for mal-administration, none for impossibility, only partially for delay associated with the specific appeal in which it was alleged and only partially for over-zealous inspection as set out for a 2 ½ month period for ASBCA 54331. Accordingly, none of these issues claimed in plaintiff's complaint have been fully adjudicated (Compl.).

As is seen above, the C.O. never addressed the claims presented in the complaint now before this Court other than the delay associated with only the specific appeals that alleged delay (Compl.). The reason the C.O. never addressed these claims (until June 2006 - the current appeal before this Court) (A 296-306) was because he was never asked to in the small claims appealed to the ASBCA.

The claim of Mal-administration was not decided.

The claim of Over-zealous Inspection was not decided.

The claim of Impossibility was not decided.

In summary, the ASBCA addressed:

(1) Delay in accepting the new building;

(2) Gas line delay;

(3) Change order time extensions;

(4) Chilled water line delay;

(5) Re-siting the building changes;

(6) Various electrical, hardware, cabinet and mechanical damper changes

(7) Foundation changes (A 217 - 265).

Nowhere in its various decisions did the ASBCA address "Mal-administration of the Contract, Over-zealous Inspection, and/or Impossibility" (A 217 - 265). As for delay, the board awarded compensable delay on one appeal (ASBCA 54331) and denied delay on the other specific claims seeking delay (A 214 - 265).

As explained in detail in Plaintiff's Proposed Findings of Uncontroverted Fact submitted with this response, defendant was guilty of both mal-administration and over-zealous inspection during the life of this contract.

## VII. SPECIFIC RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Defendant's motion, pages 2 - 4** proceeds to provide the "nature of the case" of its motion. Plaintiff offers the following comments to this summary:

1. The Court should note that defendant took more than 940 calendar days (well over 2 ½ years) to render its final decision. (November 7, 2003 [time of claim submission] to June 9, 2006 [date of this decision] (Page 2 of defendant's motion). Please note further this final decision was issued only after an order from this Court so directed (Exhibit 11). Is this further proof of "mal-administration"?

2. The apparent purpose of defendant's summary of the complaint filed at this Court is to try to show these were the same facts and issues tried before the ASBCA. A detailed examination earlier in this response of the claims submitted, the C.O.D.'s and the ASBCA decisions rendered, show that the issues in the present claim remain un-litigated (Compl. 2).

3. There is no question there are references such as "delay" and "over inspection", and examples of failures on defendant's part to accomplish some of their contractual responsibilities. After all, this was a construction contract to build a single one-story brick-faced (5700 square foot) building with minor re-hab to an existing chapel (Compl.& A 58-59). It involved the same parties, the same location, the same project, so the elements found in this dispute would be expected to be the same or similar. Delays occurred; over-inspection occurred; failure of the defendant to do various things occurred during the life of the contract (Exhibit 10). If plaintiff argued over-inspection for February - April of 2003 in ASBCA 54331, are they now precluded from arguing it for the rest of the contract? That is defendant's position.

Taking only one of the main issues, over-inspection, over-zealous inspection being the same: it occurred during the life of this contract (Exhibit 10). How can plaintiff be

precluded from litigating this issue when it has never been litigated for the entire contract? As this response shows, plaintiff is not barred from trying over-zealous inspection for the entire contract.

**<u>Defendant's motion, page 4</u>** discusses "Course of Prior Proceedings". It concludes that plaintiff has extensively litigated its concerns regarding the Navy's administration of the contract before the ASBCA. An examination of defendant's uncontroverted facts will be presented in a separate document. Suffice it to say here, a detailed examination of each of the claims, the final C.O.'s decisions and the ASBCA's decisions, does not support defendant's position of extensive litigation. Instead, it shows claims for less than $100,000 directed at specific changes, delays and differing site conditions for the most part. There has been no "extensive"litigation of the claims now before this Court.

**<u>Defendant's motion, page 4</u>** refers to a lack of an appeal by plaintiff to any of the ASBCA decisions. First of all, the parties had agreed to bench decisions and that is what the board rendered (A 136). Normally there could be no appeal from a bench decision (Exhibit 9). Second, eight appeals had been set to be "fast-tracked" (eight appeals tried in five days) (A 52). This entire process was to resolve these eight appeals once and for all.

**<u>Defendant's motion, bottom of page 4</u>** discusses a return to the ASBCA on the issue of quantum. Here is what actually happened. On ASBCA 54331, the board ruled that appellant was entitled to 40 days of compensable delay (A 218). During negotiations, the Navy refused to pay any compensation and decided that appellant should receive 40 days of time only with return of 40 days of liquidated damages, (Exhibit 12) thereby forcing appellant back to the board.

Even more egregious was defendant's reneging on the signed settlement agreement negotiated between the parties on the other appeals decided by the board (A266-280). After a bottom line monetary agreement, except for ASBCA 54331, had been signed and exchanged by both parties, (A271-273) the Navy reneged, thereby forcing appellant back to the board for breaching this agreement (A 271-275). The ASBCA resolved these quantum issues in ASBCA 54887 (A 294-295).

**<u>Defendant's motion, page 5, first paragraph</u>** concludes that the appeal filed at this Court was based upon the same facts and circumstances as the ASBCA appeals. Some of the

same type of issues are being claimed in the appeal to the Court, but these are not the identical issues tried at the board. Earlier in this response, a detailed analysis was provided for each appeal tried before the board. Any similar type issues tried there were exclusively associated with the subject matter of the appeal. For example, ASBCA 54332, a claim for delay based on a gas line encountered, has nothing to do with the delay alleged in the appeal before this Court (Compl.). The word "delay" is used in the board appeal and is used in the appeal at the Court of Federal Claims. Defendant's position appears to be that plaintiff is precluded from ever claiming for any more delay. It is an untenable position.

Even though there has been no adjudication of either the claims or the issues before this Court other than as described above, plaintiff feels compelled to respond to each of defendant's examples in its motion.

**<u>Defendant's motion, beginning on page 9, bottom of page</u>**:

**"(1) the Navy's failure to partner with PMC, compare Compl. ¶ 13, 21(1) with A 76, 132, 144, 160"**

***<u>Response:</u>*** Paragraph 13 of the complaint filed at this Court mentions failure to use partnering in this project, paragraph 21(1) does not mention partnering.

Comparing partnering to the references in defendant's appendix, partnering is mentioned at both A 76 and A 132 but in the board's decision, it was never a consideration (A 217 - 221). Also, these references were limited to an appeal concerned with Phase II Delay (ASBCA 54331) (A 57, 76 and 132).

Comparing partnering to the reference in defendant's appendix at A 144, you find the term is used by defendant's witness in an answer to a question having nothing to do with partnering (A 144). This answer appears to be from the testimony of ASBCA 54332 (a claim for delay based on encountering a leaking gas line) (A 6 - 8). Partnering was not the issue and based on the ASBCA's decision, was never a consideration of the board (A 222 - 227).

Looking at defendant's reference to A-160 as relating to partnering, the term is not present on this page (A 160). What is on page A-160 is argument by appellant counsel concerning the appeal for having to redesign the new building (ASBCA 54393) (A 158 - 160).

**"(2) the Navy's failure to follow its own design/build manual, compare Compl. ¶ 11 with A 59, 61, 134, 150 - 54;"**

***Response:*** Paragraph 11 of the Complaint filed at the Court alleges a failure of the Navy to follow their own Design/Build Manual.

Comparing the paragraph with A 59, 61 you find first that this reference is to ASBCA 54331 (Phase II Delay) (A 57 - 61). This was a specific claim about a 2 ½ month delay on the Government's part to accept the new construction (A 2 - 4). Second, these two pages (A 59, 61) are part of appellant's counsel's opening statement, not testimony from the hearing.

The reference to A-134 is also further argument from appellant counsel for the same appeal (ASBCA 54331) (A 134)....no evidence, just argument.

Perhaps this is a good point in the response to inform the Court how Judge Coldren, the ASBCA judge who heard the eight appeals, wanted final argument presented. Judge Coldren directed both parties' counsel in their final argument on each appeal as follows: "I want a summary of what you want me to hold first and then we'll go directly from there into your full argument." (A 127). Accordingly, any argument by counsel was an attempt to recover everything possible.

The reference to A 150-54 is testimony out of ASBCA 54393, the appeal for having to redesign the siting of the building to be built (A 148 - 149). The Navy's design/build manual was relevant to this claim for the extra cost of having to redesign the foundation and layout of the building (A 148). Defendant's reference to A 150-54 is strictly limited to ASBCA 54393, as are its references to (A 147 - 154).

**"(3) the Navy's changes to PMC's design delayed construction, compare Compl. ¶¶ 14, 17, 19 with A 60-63, 72-75, 148-49, 158-60,"**

***Response:*** Paragraphs 14, 17 and 19 all refer to the Manual (The Navy's Design/Build Manual) and to specific direction offered to the Navy in the manual for use in administering design/build contracts (Complaint Case No. 06-47C at ¶¶ 14, 17, 19).

Comparing these references to A 60 - 63, these were remarks made by appellant's counsel in his opening statement while giving some background to the entire project for the benefit of the board (A 58 - 63). This was the first appeal heard, so an explanation of the background of the project seemed appropriate (A 57 - 58). This had nothing to do with the

first appeal (ASBCA 54331), as the opening statement for it began on the bottom of A 63 (A 63). In any case, an opening statement is not testimony.

Comparing these references to A 72 - 75, this testimony concerning the design/build process relates exclusively to ASBCA 54331 (A 57, 72 - 75), not to the entire contract. In addition, none of this information was even a consideration of the ASBCA Judge in his decision on this appeal (A 218 - 221).

Comparing these references to A 148 - 49, defendant is again citing part of an opening statement from appellant's counsel (A 147 - 149). Such remarks should not be considered evidence. Relying on the ASBCA decision on this appeal for re-siting the building (ASBCA 54393), there was no consideration given by Judge Coldren to these remarks (A 240 - 245).

Comparing these references to A 158-60, we find defendant citing appellant's counsel's closing arguments (A 158 - 160). This was for ASBCA 54393, Re-siting the Building, not for the entire contract. Again, none of this argument was relied upon by Judge Coldren in his decision (A 240 - 245).

**"(4) the Navy's failure to complete close-out work, compare Compl. ¶ 20 with 66-67, 89, 99-100, 127;"**

***Response:*** Paragraph 20 of the Complaint alleges failure by the Navy to complete its close-out work (Complaint ¶ 20).

Comparing that paragraph with references to the ASBCA transcript at pages 66 - 67, 89, 99-100, 127 we find the following:

A 66-67 are part of appellant's counsel's opening statement for ASBCA 54331 (Phase II Delay) (A 57, 66-67). In addition, the term "close-out work" does not appear (A 66-67). A 89, A99-100 are also part of the testimony for ASBCA 54331 (Phase II Delay). None of these references use the term "close-out work". A 127 is part of appellant's counsel's final argument on ASBCA 54331 (Phase II Delay).

**"(5) the Navy's failure to cooperate with PMC, compare Compl.¶ 21 with A 130, 155-57;"**

***Response:*** Paragraph 21 of the Complaint does allege the Navy's failure to cooperate (Compl. ¶ 21).

Comparing paragraph 21with A 130, we find part of appellant's counsel's final

argument on ASBCA 54331 (Phase II Delay)(A 57, 127 - 130). This is not evidence and the remark by counsel was limited to the very first appeal concerning 82 days of delay in February, March, April and part of May, 2003 (A 2 - 5).

As to A 155-157, these are transcript pages from ASBCA 54393 (Re-siting the Building). Such testimony was limited to this claim for changes to the design in the amount of $18,997.71 (A 22 - 24). The testimony never uses the term "cooperation" but the gist of the testimony was concerned with failure to get along (A 155 - 157).

The ASBCA did not consider cooperation in rendering its decision in this appeal (A 240 - 245).

**"(6) the Navy's failure to honor NAFTA, compare Compl. ¶ 21(e) with A 14-16;"**

***<u>Response:</u>*** Paragraph 21(e) of the Complaint concerns the Navy's failure to honor the North American Free Trade Agreement (NAFTA) on this contract.

Comparing paragraph 21(e) to A 14-16, there are similar allegations in the complaint filed for the NAFTA appeal (A 14 - 16).

This matter concerning NAFTA and its effect on plaintiff has been resolved. As stated in the complaint before this Court, "...After the completion of this contract, the Navy determined that it was wrong and NAFTA applied..."

Plaintiff will amend its Complaint to delete any claims concerning NAFTA.

**"(7) the Navy's failure to respond to RFI's compare Compl. ¶ 21(f) with A 143;"**

***<u>Response:</u>*** Paragraph 21(f) of the Complaint refers to Requests For Information (RFI's) and how they were handled by the Navy.

Comparing this paragraph to A 143 we find testimony limited to ASBCA 54349, (an appeal for delay concerning a differing site condition in the form of a chilled water line) (A 18-20). This appeal was for a delay which occurred between April and July, 2002, (a 28 day delay) associated with a differing site condition (A 18 - 20).

The ASBCA limited its decision to one RFI concerning the chilled water line in question (A 235 - 239). There are "numerous" RFI issues referred to in plaintiff's complaint (Compl.¶ 21[f]).

Plaintiff will amend its complaint to delete any claims concerning RFI's that relate to the chilled water line in this appeal.

**“(8) the Navy’s use of multiple punch lists, compare ¶ 21(d) with A 65, 80, 132.”**

***Response:*** Paragraph 21(d) of the complaint does refer to numerous punch lists being created by the Navy.

Comparing this paragraph with A 65, 80, 132, we find that A 65 is part of appellant’s counsel’s opening statement to ASBCA 54331 (Phase II Delay). Again, not evidence in this appeal but also of importance, it was limited to this single appeal. A 80 contains testimony about a single pre-final punch list (A 80) and is concerned with ASBCA 54331 only (A 57 & 80). As for A 132, it is again part of appellant’s counsel’s final argument for ASBCA 54331. Not only is this not evidence, it also was never a consideration in the decision rendered by the ASBCA for this appeal (A 217-221).

**“(9) the Navy’s over-inspection of the contract, compare Compl. ¶ 21(i) with A 64-65, 118-21, 126-27, 129, 133-134;”**

***Response:*** Paragraph 21(i) of the complaint alleges a failure by the Navy inspecting this project as required. It also notes over-inspecting the project.

Comparing this paragraph with A 64-65, 118-21, 126-27, 129 and 133-34, we find first of all that all these references come from the same appeal, ASBCA 54331 (Phase II Delay). Taking each reference separately we find the following: A 64-65 are part of appellant’s counsel’s opening statement for ASBCA 54331 only; A 118-21 is testimony of defendant’s QA inspector’s inspection in connection with ASBCA 54331 only (A 120-121). A 126-27 also deals with over-inspection on ASBCA 54331 only (A 126). A 127 is part of appellant’s counsel’s closing argument as are A 129 and 133-34 for this same appeal (A 129, 133-34). (A 57-136).

**“(10) the Navy’s takeover of PMC’s quality control program, compare Compl ¶ 21(i) with A 108-10, 117, 135;”**

***Response:*** Paragraph 21(i) does allege that the Navy took over the quality control inspection requirements that were contractually the contractor’s responsibility (Compl. ¶ 21[i]).

Comparing this paragraph with A 108-110, 117, and 135 we find first of all that each of these references come from a single appeal, ASBCA 54331 (Phase II Delay); and second that A 108-10 and 117 is testimony concerning the defendant’s QA inspector doing

inspection work in connection with this appeal and A 135 is part of appellant's counsel's final argument for this same appeal.

This subject was not considered by the ASBCA in their decision on this appeal (A 217-221).

**"(11) the Navy's failure to timely install telephone lines, compare Compl.¶ 21(b) with A 66, 95, 102, 105-06;"**

***Response:*** Comparing that paragraph to A 66, 95, 102, 105-06 we find, first of all, that each of these references is from a single appeal, ASBCA 54331 (Phase II Delay) (A57-136). A66 is part of appellant's counsel's opening statement; A95 contains testimony about the Navy's responsibility to provide the telephone lines; A 102 refers to telephone service for the new building; A 105-06 mentions telephone lines on A 106 only as being necessary to operate the HVAC system (A 106).

The ASBCA decision did not consider the telephone lines in its decision (A 217-221).

**"(12) the Navy's failure to accept the new building until PMC provided a new testing and balancing (TAB) report for the HVAC system; compare Compl. ¶ 21(c) with A 78-80, 87-88, 93, 95, 98, 128, 135-36."**

***Response:*** Paragraph 21(c) of the complaint does allege a failure on the Navy's part to perform the final punch-out inspection without a new TAB. It does not mention acceptance of the new building.

Comparing this paragraph with the referenced transcript pages found in defendant's appendix to the motion, first of all, each of these references are from a single appeal, ASBCA 54331 (Phase II Delay) (A 57-136). A 78-80 mentions a TAB report or testing and balancing on A 78 and A 79 only. They are again mentioned on A 87-88, A 93, A 95, and A 98 in the testimony. As for A 128 and A 135-36, this is again closing argument from a single appeal by appellant's counsel.

The ASBCA did consider testing and balancing in their decision rendered on this appeal (A 217-221).

Plaintiff will amend its Complaint to delete any claims based on testing and balancing decided in ASBCA 54331.

A Summary of defendant's examples of many of the same factual allegations in the present complaint having been tried before the ASBCA (defendant's motion at pages 9 and 10), provides the following results:

(1) Only four separate appeals were referenced (ASBCA 54331, 54332, 54349 and 54393) while eight appeals were tried at the Board (Exhibits 6 - 13).

(2) A majority of the references were to a single appeal, ASBCA 54331 (Phase II Delay).

(3) A majority of the references to ASBCA 54331 were to appellant's counsel providing the opening statement or final argument, not to testimony of witnesses.

At the first full paragraph of page 10 of the motion, defendant continues with the argument that the issue of over-zealous inspection had been thoroughly tried before the board. Defendant cites for the most part the same references to the transcript from ASBCA 54331 (Phase II Delay) for example, A 108-10, 113-14, 116-17, and 119-25.

Plaintiff agrees that the issue of over-zealous inspection was part of the Phase II Delay appeal. There was testimony about this issue. The Board in their decision, however, did not consider this issue (A 217-221).

In the other references to the transcript, we find the following:

A 189, 192-93 was testimony on ASBCA 54421, an appeal for a number of changes directed by the Government (A 31 - 38). The Government's QA inspector was mentioned here but there was no testimony about over-zealous inspection and in fact, this entire appeal dealt with issues of extra and/or changed work (A 31-38 and A 251-259). The QA inspector did direct some of these changes for which the contractor made claim, but this was not an inspection issue, this was concerned with changes (A 189, 192-93).

An examination of both the complaint in this appeal (ASBCA 54421) and the board's decision shows no issue of over-zealous inspection (A 31-38, 251-259).

As for A 203-07 and 209, this was all testimony of alleged changes directed by the Government QA inspector. Over-zealous inspection was not mentioned because the issue before the board was, "changed work", not over-zealous inspection (A 39-41). This fact is confirmed by the ASBCA's decision in this appeal which held that appellant failed in its burden of proof to prove the adequacy of the design changed. Inspection was never

mentioned (A 261-265).

In the middle of page 10, defendant argues that appellant's counsel referred to over-zealous inspection by their QA inspector and cites ASBCA 54331 again. First, it is merely argument. If this issue was tried in this appeal, it is limited to that appeal. However, when the board's decision is reviewed, it is seen that the issue of over-zealous inspection was not considered or decided (A 217-221). Defendant continues to argue on page 10 that appellant's counsel's closing statement on ASBCA 54331somehow results in litigation of this same issue (overzealous inspection). Counsel's argument isn't evidence of anything. As previously explained, counsel was merely responding to the directions of the board, in its final argument (A 127).

Defendant continues to argue what it has already cited in the middle of page 10 where it references ASBCA 54484 as supporting the litigating of the issue of over-zealous inspection. As previously explained, the issue here was Government directed changes (A 39-41). This is confirmed by the ASBCA decision on this appeal (A 261-265).

Near the bottom of page 10 of the motion, defendant references ¶ 31(b) of the complaint as being the same or similar allegation recorded in ASBCA 54484. Defendant is correct but it was not the issue decided by the ASBCA (A 261-265).

Defendant's arguments about their QA inspector (Schutze) communicating with subcontractors and having conflicts with various Contractor superintendents as part of the testimony of ASBCA 54484 being repeated in the Complaint filed at this Court, misses the issue. In ASBCA 54484, "changes" was the issue (A 39-41 and A 261-265). In the current appeal, the issue is over-zealous inspection (Compl., pp. 9-18). There are common facts in both issues, but issues of over-zealous inspection were neither tried nor decided in ASBCA 54484 or 54393 (A 39-41, A 261-265, A 22-26 and A 241-245).[7]

At the very bottom of page 10, defendant's motion concludes there is substantial overlap between the allegations raised before the ASBCA and the allegations raised in the complaint before this Court. As shown in the detailed analysis above, any overlap is

---

[7] Defendant's Appendix to the Motion has a confusing error found at pp 146 through 160. Page 146 indicates this is the record for ASBCA 54333 which involved compensable time for several modifications issued. In fact, the transcript beginning at page 147 is from ASBCA 54393 for re-siting the building.

extremely minor. Over-zealous inspection was argued in one appeal (ASBCA 54331) (A 2-4). It was not an issue considered or decided by the board (A 217-221). The worst case scenario for plaintiff would be the issue would be eliminated for the 2 ½ month period that ASBCA 54331 covered, not the rest of the 800 plus days of this contract (A 2-4), but that could occur only if the ASBCA had adjudicated the issue...which it did not (A 217-221).

As to defendant's allegation on page 11 of its motion that if plaintiff didn't raise these various issues before the board, it should have, the answer has been provided above. In summary, plaintiff was bound by the claims submitted and the C.O.'s decisions rendered before the ASBCA per the C.D.A. [41 U.S.C. Sec 605(a)(b) and Sec 607 (d)] and such cases as *Santa Fe Engineers, 818 F.2d 856 (1987).*

Accordingly, plaintiff will not respond further to defendant's examples of the use of certain words found in the ASBCA transcripts primarily as an indication that these matters were tried and resolved by the board. The board's decisions and the reasoning offered for each decision should be determinative of the issues resolved there (A 217 - 265).

## VIII. FINAL SUMMARY

*Res judicata* (claim preclusion) does not apply. The claims now before the Court are new. They were never submitted to or decided by the ASBCA. Because of CDA limitations, these new claims could not have been tried before the ASBCA at the same time as the eight appeals.

Collateral estoppel (issue preclusion) does not apply. None of the issues before the Court were actually litigated and decided by the ASBCA (except in part for delay associated with specific claims).

## IX. CONCLUSION

For the reasons and law stated, plaintiff respectfully requests that the Court deny defendant's Motion for Summary Judgment.

Respectfully submitted,

**s/David A. Tomlinson**

DAVID A. TOMLINSON
5716 Tee Box Court
Granbury, Texas 76049
817-578-8199
Attorney of Record for Plaintiff
PHILLIPS/MAY CORPORATION

Electronically filed
November 27, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of November 2006, a copy of the foregoing "PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**s/David A. Tomlinson**