**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PHILLIPS/ MAY CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-47C |
| | ) | (Judge G. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56(h)(2) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits the following responses to plaintiff's proposed findings of uncontroverted fact in support of its response to defendant's motion for summary judgment.

1. Contract No. N62467-01-D-0257 ("the contract") was for the design and construction of the Religious Ministry Facility made up of a new one-story brick building approximately 5700 square feet in size and the re-hab of an existing chapel located next to the new building. (A 58[1] & Exhibit 13[2]).

**Response:** Defendant agrees.

2. The Notice to Proceed for the contract was issued on May 23, 2001 (Compl[3]. ¶ 2).

**Response:** Defendant agrees that, on May 23, 2001, plaintiff was issued a notice to proceed with all work that had been approved on required submittals.

[1] "A__" refers to the Appendix filed by defendant with their Motion for Summary Judgment.

[2] "Exhibit__" refers to documents in chronological order that will be filed simultaneously with this Response to Defendant's Motion for Summary Judgment.

[3] "Compl." refers to the Complaint filed with this Court January 19, 2006.

3. The contract was to be both designed and constructed in 256 calendar days (Compl. ¶ 10).

**Response:** Defendant agrees.

4. It took the contractor until June 24, 2003 to complete the contract (A 267).

**Response:** Defendant disagrees. The document cited reflects that the beneficial occupancy acceptance date was June 24, 2003.

5. The total number of days to complete this contract exceeded 800 calendar days (April 11, 2001 - June 24, 2003) (Compl. ¶ 4 & A 267).

**Response:** Defendant agrees that the total number of days between contract award and the beneficial occupancy acceptance date exceeded 800 calendar days.

6. On or about November 7, 2003, plaintiff submitted a certified claim for delay, mal-administration of the contract, over-zealous inspection and impossibility ("the claim") to the Contracting Officer at the NAS-JRB, Fort Worth, alleging various government-caused direct and indirect cost increases experienced on the contract and demanded a final Contracting Officer's decision (Compl. ¶ 5).

**Response:** Defendant agrees.

7. On June 9, 2006, under an order from this Court, the Contracting Officer (C.O.) rendered his final decision denying the claim in its entirety (A 296-306 & Exhibit 11).

**Response:** Defendant agrees.

8. The final decision dated June 9, 2006, specifically found, concerning the issue of over-zealous inspection, that their inspector (Tom Schutze) was not guilty of this (A 299).

**Response:** Defendant disagrees. The contracting officer found that PMC's over-zealous inspection claim was not properly before him because that claim was previously presented in the ASBCA appeals between the parties. The contracting officer stated, "[w]hile we submit that Mr. Schutze at all times conducted himself in a manner consistent with section 01459, Quality Control, of the contract, these issues are not properly before the Contracting Officer as P/MC previously presented them as a basis for the [ASBCA appeals]." A 299.

9. This was the first time that the C. O. had ever addressed the issue of over-zealous inspection in a final decision to a claim under this contract (Exhibits 1-8 & A 299).

**Response:** Defendant disagrees. While the term "over-zealous inspection" is not used in the contracting officer's earlier final decisions, the contracting officer responded to issues where PMC claimed extended inspections or directions from the Government or the Government's Construction Representative. In final decision 04-S-007, issued on March 19, 2004, the contracting officer noted PMC claimed delay for an extended inspection period and the contracting officer addressed a claim for delays which resulted from failure to inspect in a timely manner. Exhibit 1. In final decision 04-S-010, issued on March 26, 2004, the contracting officer addressed PMC's contention that the Government's Construction Representative directed certain changes to the foundational design. Exhibit 8. In final decisions 04-S-010 and -011, many issues were raised regarding construction work required as a result of Government inspection, to which PMC took exception. Exhibits 7-8.

10. The issue of "over inspection" was alleged in the first ASBCA hearing for the Phase II Delay claim (ASBCA 54331) (A 1-4).

**Response:** Defendant agrees.

11. The ASBCA in their decision on ASBCA 54331did not rule on the issue of over-inspection (A 217-221).

**Response:** Defendant disagrees. While the bench decision in ASBCA No. 54331 does not specifically discuss the issue of over-inspection, it may be presumed that the board did not find that over-zealous inspection occurred or delayed the contractor, because the board did not award any days of compensable delay based upon overzealous inspection. See A 220-21. Instead, the board found that PMC was entitled to 40 days of compensable delay because the Government accepted ownership of the new building on March 21, 2003. A 221. Because PMC elected to utilize the ASBCA's accelerated claims procedures, which, pursuant to Rule 12.3 of the ASBCA's rules, results in a written decision that is "short and contain[s] only summary findings of fact and conclusions," PMC's implicit allegation that the board decided only those claims affirmatively discussed and explained in an opinion is erroneous.

12. The issue of over-inspection or over-zealous inspection was never alleged in the other seven ASBCA appeals (A 5-41).

**Response:** Defendant disagrees. While the precise terms "over-inspection" or "over-zealous inspection" were never used in the complaints in the other eight ASBCA appeals, A 5-41, extra work was alleged to be required by the Navy's Quality Assurance Representative, A 35, 39, and, therefore, over-inspection was challenged and made an issue.

13. The issue of over-inspection or over-zealous inspection was never addressed or decided by the ASBCA in any of the eight appeals tried before them under this contract (A 217-265).

**Response:** Defendant disagrees. Although the terms "over-inspection" or "over-zealous inspection" were not used in any of the bench decisions in the ASBCA appeals, it can be assumed that the board did not find "over-inspection" or "over-zealous inspection" because the board did not award compensable delay or equitable adjustments in any of the appeals because of "over-inspection" or "over-zealous inspection." Additionally, the issue of overinspection was tried in ASBCA No. 54331. See DPFUF ¶¶ 9-16.[4] Moreover, in ASBCA Nos. 54421 and 54484, the contractor raised issues involving directions from the Government's Quality Assurance Representative. See DPFUF ¶¶ 41, 43.

14. The claim for mal-administration of the contract was presented to the C.O. in plaintiff's certified claim dated November 7, 2003 (Compl. ¶ 3-9).

**Response:** Defendant agrees.

15. A claim for mal-administration of the contract had not been previously submitted in the nine claims under this contract appealed to the ASBCA (A 1-41 and 233-234).

**Response:** Defendant disagrees. A claim specifically for "mal-administration" of the contract has not been previously submitted to the board, but elements of plaintiff's mal-administration claim were previously presented to the board, including, but not limited to, the Navy's alleged failure to partner with PMC, A 76, 132, 144, 160; the Navy's alleged failure to follow its own design/build manual, A 59, 61, 134, 150-54; and the Navy's alleged failure to complete close-out work, A 66-67, 89, 99-100, 127. See Def. Mot. at 9-10.[5]

---

[4] "DPFUF__" refers to defendant's proposed findings of uncontroverted fact, filed with the Court on October 27, 2006.

[5] "Def. Mot.__" refers to defendant's motion for summary judgment, filed on October 27, 2006.

16. A claim for mal-administration of the contract was never addressed or decided by the ASBCA in any of the eight appeals tried before them under this contract (A 217-265).

**Response:** Defendant disagrees. Although a claim for "mal-administration" of the contract was never addressed using that precise terminology by the ASBCA in the eight appeals decided by the board, issues of mal-administration were addressed by the board. For example, the board found that the Navy was reasonable in refusing to accept the new facility until deficiencies in the heating and ventilation system were corrected, and the Navy received an acceptable testing and balancing report, A 220-21; that the Navy's failure to respond to the chiller line problem caused a delay in the chiller line activity, A 238; that PMC was entitled to an equitable adjustment for a significant change in the design concepts, A 245; and that the Navy was entitled to rely upon its request for proposals ("RFP") in the event of conflicts, errors, or omissions. A 254.

17. The claim of impossibility of performance for the contract was presented to the C.O. in plaintiff's certified claim dated November 7, 2003 (Compl. ¶ 20).

**Response:** Defendant agrees.

18. A claim for impossibility of performance of the contract had not previously been submitted in the nine claims under this contract appealed to the ASBCA (A 1-41 & 233-234).

**Response:** Defendant disagrees. PMC uses the term "impossibility" before this Court to refer to its allegation that "it was impossible to design and build the project in the time provided in the contract due to Navy's failure to administer this Contract in accordance with their own rules and regulations." Compl. ¶ 45. Although the exact term "impossibility" was not submitted to the ASBCA, some of the issues, which the contractor now defines as "impossibility" before

this Court, were in fact submitted to the ASBCA. For example, in ASBCA Nos. 54393 and 54491, issues regarding delay and changes to the design by the Navy were raised, tried, and decided. A 22-23, 31-38. Issues regarding the Navy's failure to follow its own rules and regulations were also raised in other ASBCA appeals. See A 59, 61, 134, 150-54, 160.

19. A claim for impossibility of performance of the contract was never addressed or decided by the ASBCA in any of the eight appeals tried before them under this contract (A 217-265).

**Response:** Defendant disagrees. Although the term "impossibility" was not used by the ASBCA in its eight decisions regarding this contract, many of the issues that PMC now defines as "impossibility" in the complaint before this Court were submitted to the ASBCA. For example, in ASBCA Nos. 54393 and 54421, issues regarding delays and changes to the design were raised, tried, and decided. A 22-23, 31-38, 241-46, 252-59.

20. A claim for delay associated with the issues of mal-administration or impossibility had not been previously submitted in the nine claims under the contract appealed to the ASBCA (A 1-41 & 233-234).

**Response:** Defendant disagrees. Although the terms "mal-administration" and "impossibility" were not used in previous claims submitted to the board, PMC previously raised delay claims that contained issues of "mal-administration" and "impossibility" as defined by PMC in its complaint before this Court. See A 2-4, 6-7, 18-20, 22-24, 31-38.

21. A claim for delay associated with the issues of over-zealous inspection, mal-administration or impossibility was never decided by the ASBCA in any of the eight appeals tried before them under this contract (A 217-265).

**Response:** Defendant disagrees. Although the terms "over-zealous inspection, "mal-administration," and "impossibility" were not used in any of the ASBCA decisions, the ASBCA specifically tried the issue of over-inspection in ASBCA No. 54331 and did not find any delay attributable to that. A 217-21. Regarding mal-administration and impossibility, along with ASBCA No. 54331, in ASBCA Nos. 54393 and 54421, issues of delay because of alleged Government acts of "mal-administration" were also decided by the board. See A 241-45, 252-59.

Additional Paragraphs In Plaintiff's Proposed Findings Of Uncontroverted Fact

Paragraphs 22 through 125 are the subject of defendant's motion to strike, filed simultaneously with this response. Defendant has moved to strike these additional proposed findings of uncontroverted fact because they are irrelevant and immaterial to defendant's motion for summary judgment and plaintiff has not filed a cross-motion for summary judgment. Should the Court deny defendant's motion to strike, defendant respectfully requests an additional 30 days to respond to these proposed findings of uncontroverted fact, and the ability to request discovery, if necessary.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

OF COUNSEL:

AUDREY VANDYKE
Associate Counsel (Litigation)
Naval Facilities Engineering Command
Litigation Office - Building 36
720 Kennon Street, S.E., Room 136
Washington Navy Yard, D.C. 20374

s/Dawn S. Conrad
DAWN S. CONRAD
Trial Attorney
Civil Division
Commercial Litigation Branch
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-2279
Fax: (202) 305-7643

Attorneys for Defendant

electronically filed
December 11, 2006

CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of December, 2006, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Dawn S. Conrad