ORIGINAL

# United States Court of Appeals for the Federal Circuit

FILED
JUN 2 3 2008
U.S. COURT OF FEDERAL CLAIMS

2007-5139

PHILLIPS/MAY CORPORATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

## Judgment

ON APPEAL from the United States Court of Federal Claims

in CASE NO(S). 06-CV-00047

This CAUSE having been heard and considered, it is

ORDERED and ADJUDGED:

**AFFIRMED**

ENTERED BY ORDER OF THE COURT

DATED APR 2 3 2008

Jan Horbaly, Clerk

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
By: Date: 6/23/08

ISSUED AS A MANDATE: JUN 2 3 2008

# United States Court of Appeals for the Federal Circuit

2007-5139

PHILLIPS/MAY CORPORATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

David A. Tomlinson, of Granbury, Texas, argued for plaintiff-appellant.

Dawn S. Conrad, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were Jeanne E. Davidson, Director, and Harold D. Lester, Jr., Assistant Director. Of counsel on the brief was John S. McMunn, Senior Trial Attorney, United States Department of the Navy, of Alameda, California.

Appealed from: United States Court of Federal Claims

Judge George W. Miller

# United States Court of Appeals for the Federal Circuit

2007-5139

PHILLIPS/MAY CORPORATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 06-CV-00047, Judge George W. Miller.

---

DECIDED: April 23, 2008

---

Before LOURIE, GAJARSA, and DYK, Circuit Judges.

DYK, Circuit Judge.

Plaintiff-appellant Phillips/May Corporation ("Phillips") appeals from a decision of the United States Court of Federal Claims granting summary judgment in favor of the government. Because the Court of Federal Claims correctly determined that Phillips's complaint was barred by res judicata, we affirm.

BACKGROUND

On April 11, 2001, Phillips was awarded Contract No. N62467-01-D-0257 ("the contract"), for the design, labor, materials, and equipment necessary to construct the Religious Ministry Facility at the Naval Air Station-Joint Reserve Base ("NAS-JRB") in Fort Worth, Texas. Under the contract, Phillips was responsible for the rehabilitation of

an existing chapel and the construction of a new building next to that chapel. Notice to proceed on the contract was issued on May 23, 2001, and the project was to be completed in 265 calendar days. Phillips ultimately completed the work on June 24, 2003—more than 800 days after beginning work. The NAS-JRB accepted the completed Religious Ministry Facility. Phillips was paid $1,229,385.30 for its work; the original contract price was increased by $32,052.30 due to contract modifications.

Between July 10, 2003, and November 12, 2003, Phillips submitted to the Contracting Officer ("CO") at NAS-JRB ten claims related to its work under the contract. One of these claims, submitted on November 7, 2003 ("Inspection Claim"), was for "Delay, Mal-Administration of the Contract, Overzealous Inspection and Impossibility." J.A. at 86. The CO failed to act on any of the claims within the sixty days; this failure constituted a denial of Phillips's claims under 41 U.S.C. § 605(c)(5), and gave Phillips the right to appeal. The claims became appealable between September 8, 2003, and January 11, 2004.

Between October 5, 2003, and January 29, 2004, Phillips appealed all but the Inspection Claim to the Armed Services Board of Contract Appeals ("Board"). Because each of the appealed claims involved less than $100,000, Phillips elected to have these claims tried pursuant to the Small Claims Accelerated Procedure, authorized under 41 U.S.C. § 607(f), which requires the Board to render a decision within 180 days whenever possible. In those appeals, Phillips sought compensation for costs incurred while performing the contract, which allegedly resulted from delay caused by the government's conduct and from design changes demanded by the government. One of the nine appealed claims was settled while pending before the Board. The

administrative judge ("AJ") heard the other eight appeals between March 29 and April 2, 2004, and issued decisions on them from the bench. Five of the appeals were denied, and three were sustained in part and denied in part. Ultimately, the parties entered into a global settlement agreement with respect to the nine Board appeals, and the Board entered judgment in accordance with the agreement on June 30, 2005.

As of January 2006, the CO still had not issued a final decision with respect to the Inspection Claim. On January 19, 2006, Phillips filed an appeal of that claim in the Court of Federal Claims. On June 9, 2006, the CO denied the claim in its entirety. The CO's decision determined that "pursuant to the legal principles of res judicata and collateral estoppel," Phillips was precluded from litigating the issues raised by the Inspection Claim because they were included in its other, finally adjudicated claims. Defendant-Appellee's Supplemental App. at 185.

Following the CO's decision, on October 26, 2006, the government moved for summary judgment in the Court of Federal Claims, which granted the motion. The court found that Phillips's claim involved the same parties as the claims decided in the Board appeals, that there had been a final judgment on the merits of those appeals, and that the Inspection Claim was based on the same transactional facts as the Board appeals and should have been litigated along with those appeals. The court further determined that Phillips could have appealed the Inspection Claim along with its other claims, and that Phillips could have elected to forgo the Small Claims Accelerated Procedure on those other claims in order to litigate all its appeals together. Accordingly, the Court of Federal Claims held that Phillips was barred from litigating its claim by the doctrine of claim preclusion.

Phillips timely appealed the decision of the Court of Federal Claims. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

We review the Court of Federal Claims's decision to grant summary judgment without deference. Old Stone Corp. v. United States, 450 F.3d 1360, 1367 (Fed. Cir. 2006). Whether a particular claim is barred by res judicata is a question of law, which we also review without deference. Sharp Kabushiki Kaisha v. Thinksharp, Inc., 448 F.3d 1368, 1370 (Fed. Cir. 2006).

The doctrine of res judicata involves the related concepts of claim preclusion and issue preclusion. The Court of Federal Claims here relied on claim preclusion, which refers to "the effect of foreclosing any litigation of matters that never have been litigated, because of a determination that they should have been advanced in an earlier suit." 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4402 (2d ed. 2002). As the Supreme Court has explained, "when a final judgment has been entered on the merits of a case, '[i]t is a finality as to the claim or demand in controversy . . . not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" Nevada v. United States, 463 U.S. 110, 129-30 (1983) (quoting Cromwell v. County of Sac, 94 U.S. 351, 352 (1876)). Claim preclusion applies when "(1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first." Ammex, Inc. v. United States, 334 F.3d 1052, 1055 (Fed. Cir. 2003). The doctrine is properly applied to the final judgment of

an administrative agency, such as a board of contract appeals, that "is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966); see also Sharp, 448 F.3d at 1372.

I

Phillips argues that claim preclusion does not apply here because the Contract Disputes Act of 1978, Pub. L. No. 95-563, 92 Stat. 2383 ("CDA"), specifically permits a claimant to split claims arising from the same contract between an agency board of contract appeals and the Court of Federal Claims. The CDA allows contractors a choice of forum for their appeals:

> [I]n lieu of appealing the decision of the contracting officer . . . to an agency board, a contractor may bring an action directly on the claim in the United States Court of Federal Claims, notwithstanding any contract provision, regulation, or rule of law to the contrary.

41 U.S.C. § 609(a)(1).

Phillips argues that section 609(a)(1) allows a contractor to choose the appellate forum for each of its claims, and that a court may not interfere with the contractor's choice. In support of this view, Phillips urges that section 609(d) of the act specifically contemplates the splitting of claims between the Court of Federal Claims and the agency boards because it provides for, but does not require, consolidation of such separate proceedings. Section 609(d) provides:

> If two or more suits arising from one contract are filed in the United States Court of Federal Claims and one or more agency boards, for the convenience of parties or witnesses or in the interest of justice, the United States Court of Federal Claims may order the consolidation of such suits in that court or transfer any suits to or among the agency boards involved.

Id. § 609(d).

Admittedly, the statute is somewhat ambiguous as to whether it permits (1) the filing of all claims arising from a single contract in separate fora, or (2) only claims that do not arise from the same transactional facts. We have not previously addressed this question. However, the history of the CDA makes clear that the statute is not designed to alter the usual rules of res judicata.

Before the enactment of the CDA, claims for equitable adjustment were required to be brought before the agency boards of contract appeals in the first instance, and review under a deferential standard was available in the Court of Claims. Judicial review of board decisions was, however, limited.[1] Breach of contract claims could be filed only with the Court of Claims. See Utah Constr., 384 U.S. at 402.

The CDA established the agency boards and the Court of Claims as alternative initial venues for the litigation of claims both for equitable adjustment and for breach of contract. Decisions of the boards continued to be reviewable in the Court of Claims under a deferential standard. See CDA § 8(g), 92 Stat. at 2387. Thus for the first time a contractor was given a choice of initial forum, as reflected in section 609(a)(1) of the statute. Indeed, Congress identified "restor[ing] the contractor its right to a day in court" as one of the "key issues" resolved by the CDA. S. Rep. No. 95-1118, at 11 (1978).

---

[1] See United States v. Wunderlich, 342 U.S. 98, 100 (1951) (holding that the standard disputes clause in government contracts could bar judicial review of factual issues "absent fraudulent conduct"); see also S&E Contractors, Inc. v. United States, 406 U.S. 1, 10 (1972) (holding that disputes clause could bar government, as opposed to contractor, from seeking judicial review even on questions of law, absent claim of fraud).

As reported from the Senate Committees on Governmental Affairs and the Judiciary, the section of the CDA that would become 41 U.S.C. § 609 would specifically have permitted claim splitting. Subsection (d) provided:

> Except as otherwise provided in this Act, and notwithstanding any statute or other rule of law, or any contract provision, every claim founded upon the same express or implied contract with the United States shall constitute a separate cause of action for purposes of any suit in a court of competent jurisdiction, and such court may, in its discretion, consolidate separate claims for purposes of decision or judgment, or delay acting on claim pending action on another claim.

124 Cong. Rec. S36263 (daily ed. Oct. 12, 1978) (emphasis added). The bill also included subsection (e), providing for consolidation of such split claims by the Court of Claims:

> If two or more suits arising from one contract are filed in the Court of Claims and one or more agency boards, for the convenience of parties or witnesses, in the interest of justice, the Court of Claims may order the consolidation of such suits in that court or transfer any suits to or among the agency boards involved.

Id. (emphasis added). Subsection (d) was removed from the bill before it was passed, and subsection (e) in the original bill became current subsection (d) in the statute (with the designation of the Court of Claims being changed first to the United States Claims Court and then to the Court of Federal Claims). Thus Congress considered and rejected statutory language in original subsection (d) that would have altered the usual rules of res judicata by allowing claims based on the same contract to constitute separate claims regardless of their factual overlap.

The elimination of original subsection (d) strongly suggests that Congress did not intend to allow contractors to avoid the effects of claim preclusion by splitting factually related claims. For example, in Hamdan v. Rumsfeld, 548 U.S. 557, 126 S. Ct. 2749

(2006), the Supreme Court considered whether the Detainee Treatment Act of 2005, Pub. L. No. 109-148, 119 Stat. 2739 ("DTA"), stripped the federal courts of jurisdiction over habeas corpus actions filed by detainees and pending on the date the statute was enacted. See 126 S. Ct. at 2763. Earlier versions of the bill had specifically made the habeas jurisdiction-stripping provision applicable to pending actions, but that language had been deleted. The Court held the habeas jurisdiction-stripping provision inapplicable to pending cases in part because Congress "rejected earlier proposed versions of the statute that would have included [the habeas provision] within the scope of that directive [making certain provisions retroactive]." Id. at 2766. The Court concluded that "Congress' rejection of the very language that would have achieved the result the Government urges weighs heavily against the Government's interpretation." Id.; see also Doe v. Chao, 540 U.S. 614, 622-23 (2004) (rejecting an interpretation of the Privacy Act that would allow presumed damages when "Congress cut out the very language in the bill that would have authorized any presumed damages"). Similarly, in this case, the fact that Congress rejected a provision of the CDA that would have allowed claim splitting without regard to the usual rules of claim preclusion likewise weighs heavily against Phillips's proposed interpretation of the statute to achieve that result.

In addition, the amendment deleting the original subsection (d) was accompanied by the following explanation from Senator Robert C. Byrd, then Senate Majority Leader, who proposed the amendment:

> The amendment . . . is out of a concern that the section might be interpreted as permitting the contractors to split claims arising out of the same set of facts, thereby needlessly multiplying causes of action and encouraging forum shopping. It is not the intention of the committees to

change the present law regarding joinder, compulsory counterclaims and definition of separate claims.

124 Cong. Rec. S36267 (daily ed. Oct. 12, 1978) (emphases added). This statement could not have been clearer. Congress definitively rejected the idea that the CDA was abrogating the doctrine of claim preclusion and permitting the splitting of claims based on the same set of transactional facts.[2] We reject Phillips's argument to the contrary.[3]

II

Phillips also argues, however, that, even under the usual rules of claim preclusion, it was permitted to split its claims in this case because the claims could not have been appealed together. See Restatement (Second) of Judgments § 26(1)(c) (1982) (explaining that the general rule does not apply when "plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the subject matter jurisdiction of the courts or [other] restrictions on their authority"). Phillips asserts that it could not have appealed the Inspection Claim to the Board along with its other nine claims.

---

2 Curiously, neither party mentions the amendment to the bill deleting original subsection (d), or the explanatory legislative history. Phillips's failure to mention this history is particularly noteworthy because it does cite and rely on legislative history of the statute prior to the amendment in arguing that the CDA permits claim splitting. See S. Rep. No. 95-1118, at 30-31 (1978) (describing the effect of original subsection (d), later deleted).

3 We note that the Sixth Circuit in passing has stated that "[t]he CDA . . . departs from the general policy in federal civil procedure prohibiting the splitting of claims.", United States v. Kasler Elec. Co., 123 F.3d 341, 347 n.11 (6th Cir. 1997) (citing S. Rep. No. 95-1118, at 30-31). This view of the effect of the CDA is, in our view, incorrect, and was reached relying on the same legislative history cited by Phillips here, which describes the effect of original subsection (d), the provision that was deleted from the bill before it was passed.

Phillips is incorrect that it could not have appealed all ten claims at the same time. Phillips points to two alleged obstacles to a combined appeal. First, it urges that at the time the nine claims were appealed to the Board, the CO had not rendered a decision on the Inspection Claim. The Inspection Claim became appealable on January 6, 2004—more than three weeks before Phillips appealed the last of its other claims to the Board. Phillips thus could have chosen to appeal the Inspection Claim to the Board at the same time as the others. Even if Phillips were correct that the Inspection Claim could not have been appealed at the same time as the others, it was within Phillips's control to make all ten claims ripe for review at once. This is not a situation in which the claims were required to be brought before different contracting officers, as in Florida Power & Light Co. v. United States, 198 F.3d 1358, 1360 (Fed. Cir. 1999). Phillips was obligated to prosecute its claims in the same proceeding; it could not avoid the application of res judicata through strategic delay.

Phillips also urges that it could not have filed all its appeals together in a single proceeding because the Inspection Claim did not qualify for the Small Claims Accelerated Procedure under which the other claims were resolved. Although Phillips is correct that the Small Claims Accelerated Procedure was not available for the Inspection Claim, which sought more than $100,000 in damages, nothing in the CDA indicates that a contractor has an absolute right to that accelerated procedure that prevents the application of claim preclusion. Again, Phillips could have joined the larger claim with the others. Only its own strategic choice prevented the joinder of all claims.

III

Finally, Phillips argues that it was permitted to split its claims without being subject to claim preclusion because the claims are factually distinct. As explained above, the general rule is that claim preclusion applies when "the second claim is based on the same set of transactional facts as the first." Ammex, 334 F.3d at 1055. In general, a party will be permitted to split claims if, for example, the two claims involve different sets of transactional facts. See Fla. Power & Light, 198 F.3d at 1360-61 (finding res judicata inapplicable when "the two sets of claims involve[d] not only different time periods, but also different agencies with different contracting officers and different statutory mandates regarding pricing policy"). According to the Restatement, the question of whether two claims involve the same set of transactional facts is "to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Restatement (Second) Judgments § 24(2) (1982). This rule has been refined in the contracts context, so that claims under a single contract generally must be brought together. See Wright, Miller & Cooper § 4408 ("Contract cases often can be resolved by a simple rule that the first suit must claim every breach that has then occurred.").

Our predecessor court recognized this rule in Container Transport International, Inc. v. United States, 468 F.2d 926 (Ct. Cl. 1972), concluding that res judicata would bar a contract claim for services performed after shipped goods were tendered for delivery, when an earlier action had determined the right to additional compensation for

the actual shipment of the goods. A single contract covered both the shipment and the post-shipment services. The court stated that, "normally, a single claim . . . arises out of each single, indivisible contract," and held that res judicata should bar the second claim because "[t]here was no obstacle to putting both aspects of the demand in one suit, and that would be the normal expectation for a claimant [in the circumstances]." Id. at 928-29;[4] cf. Case, Inc. v. United States, 88 F.3d 1004, 1012 (Fed. Cir. 1996) ("[T]he claim in Case II was barred by the doctrine of res judicata because it was subject to the same accord and satisfaction . . . that was fully adjudicated in Case I."). While Container was decided before the enactment of the CDA in 1978, as discussed above, we see nothing in the CDA that was designed to change the rule adopted in that case.

The presumption that claims arising out of the same contract constitute the same claim for res judicata purposes may be overcome by showing that the claims are unrelated. See Wright, Miller & Cooper § 4409 ("In some circumstances . . . a different rule may be applied on the excuse that the several obligations created by a single contract are so far separable or divisible that each constitutes a separate claim or cause of action."); see also Placeway Constr. Corp. v. United States, 920 F.2d 903, 907 (Fed. Cir. 1990) (stating that "if the claims . . . will necessitate a focus on a different or

---

4 The court did not bar the claim, however, because its holding conflicted with existing precedent, and the court found that "[p]rospective overruling" of the earlier case was appropriate because "a retroactive application of the new rule would be inequitable, producing injustice or undue hardship." Container, 468 F.2d at 930. Such an approach is no longer appropriate. See Harper v. Va. Dep't of Taxation, 509 U.S. 86, 89-90 (1993).

unrelated set of operative facts as to each claim, then separate claims will exist," and holding that under the circumstances three claims under a contract were separate).

Here we agree with the Court of Federal Claims that there is extensive factual overlap between the Inspection Claim, which was appealed to that court, and the nine claims appealed to the Board, and that the claims are not separable. The Inspection Claim included a number of allegations related to design changes and failure to follow the approved design. For example, it alleged that the government "vacillated upon which standard to follow" because it used the original design plan to generate the "punchlist" for approving the final construction, even though the design had since been revised and the government had approved the revisions. J.A. at 91. One of the nine Board appeals, claim 54421, was based entirely on the allegation that "[t]he Navy [provided] approval to [Phillips's] final design but they failed to follow this design numerous times," instead "revert[ing] back to [the original design plan] to require additional or changed work." J.A. at 73.

The Inspection Claim alleged that the government delayed by requiring a complete redesign of the facility after the initial design submitted by Phillips had been accepted by the government. J.A. at 96-97. Claim 54393, another one of the Board appeals, likewise alleged that after the award of the contract, "[a]t the first meeting between the Parties, [Phillips's] design was rejected requiring a new design to be developed." J.A. at 64. Phillips acknowledged in Claim 54393 and in the Inspection Claim that the two claims are related. See J.A. at 65; see also id. at 97 n.1. The Inspection Claim relates to the first seventeen days of delay, which were added by a contract modification that did not change the cost of the contract, while Claim 54393

relates to compensation for an additional sixteen days of delay allegedly caused by the redesign requirement. The two claims plainly are based on a single set of operative facts.

The Inspection Claim also alleged that the government's Quality Assurance Representative "asked for certain information from [Phillips] before he would approve steel drawings" for the foundation, and that this "resulted in major changes to the foundation design." J.A. at 111. Phillips acknowledged in the Inspection Claim that these "major changes" were "the subject of a separate claim to be submitted." Id. Claim 54484, one of the Board appeals, alleged that the "approved foundation . . . was not the one finally constructed because of . . . changes required by the Government's [Quality Assurance] Representative," and demanded payment for the delay caused by these changes. J.A. at 82.

The bulk of the Inspection Claim related to overzealous and delayed inspection, including allegations: that the government improperly delayed in finalizing a testing and balancing report for the facility's HVAC system and refused to perform the final punch-out inspection without this report; that the government developed an "enormous list of punchlist items" and unnecessarily re-inspected the items on it several times; that the government improperly rejected "among other things, Mexican tile, linoleum, and panels from Canada" under the Buy American Act, despite the application of NAFTA to the contract; and that the government's reason for delay in finalizing Phase I of the project, which consisted of the construction of the new religious facility, was that "[t]he Chaplain wasn't ready to move" out of the existing facility, which was to be remodeled as part of Phase II, and into the new facility. J.A. at 93-95. All of these allegations overlap with

two of the nine claims appealed to the Board.[5] Claim 54311 alleged that the government spent two and a half months inspecting Phase I, "a clear example of over inspection by the Navy," and that the delay was caused by the Navy's chaplain not being ready to move out of the existing Chapel area and into the new facilities "as early as they could have," thus delaying the start of the Phase II remodeling. J.A. at 45. Claim 54348 alleged that the government improperly rejected, as violations of the Buy American Act, "German linoleum," "certain Mexican ceramic tile," and "[s]everal other foreign-made items," all of which Phillips had provided in reliance on NAFTA's application to the contract. J.A. at 57.

Given the substantial factual and evidentiary overlap between the Inspection Claim and several of the claims appealed to the Board, there is no justification here for departing from the general rule that all claims arising out of the same contract constitute the same claim for purposes of res judicata. We therefore conclude that the Inspection Claim and the Board appeals were based on the "same set of transactional facts." Ammex, 334 F.3d at 1055. Because the parties do not dispute that the claims involve the same parties or that the Board appeals proceeded to final judgment on the merits, all three factors of the test for application of claim preclusion are met here. See id. The Court of Federal Claims correctly determined that Phillips's complaint was barred by claim preclusion and granted the government's motion for summary judgment.

[5] The Court of Federal Claims stated that "[a]lthough plaintiff raised a claim of over-zealous inspection during the hearing on [Board Claim] 54331, the [Board] decision did not rule on that claim, and over-zealous inspection was not addressed in any of the other appeals." Phillips/May Corp. v. United States, 76 Fed. Cl. 671, 673 (2007). As shown in the text, however, other claims did in fact address overzealous inspection.

Phillips's argument that the application of claim preclusion in this case constitutes a denial of due process is without merit.

CONCLUSION

For the foregoing reasons, the judgment of the Court of Federal Claims is affirmed.

AFFIRMED

COSTS

No costs.

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
By: Date: 6/23/08